# ST. ANTHONY & DAKOTA ELEVATOR COMPANY v. GREAT NORTHERN RAILWAY COMPANY.[1]

November 13, 1914.

Nos. 18,775—(40).

**Evidence — state weighmaster's records.**

1. The records in the office of the state weighmaster made pursuant to rules established by the Railroad and Warehouse Commission are competent evidence of the facts recorded therein as required by such rules.

**Same — cars in bad order.**

2. Such rules require state weighers, at the time of weighing loaded cars, to make and enter in the record notations as to any bad order condition of

[1] Reported in 149 N. W. 471.

such cars, and such notations so entered become a proper part of such record.

**Authenticated copies may be waived.**

3. Copies of such records are not admissible in evidence unless duly authenticated, but such authentication may be waived, and was waived in this case.

**Estimating value at place of shipment.**

4. In the absence of direct evidence as to the value of property at the place of shipment, such value may be determined by taking the value at the place of delivery and deducting therefrom the expense of transportation thereto from the place of shipment.

Action in the district court for Hennepin county to recover $347.-23. The answer, among other matters, alleged that the weights of the grain shipped under the bills of lading mentioned in the opinion when inserted therein were inserted "weights subject to correction" and were inserted by plaintiff or at its dictation and without any knowledge by defendant of the actual weights of the grain so delivered. The case was tried before Bardwell, J., and a jury which returned verdicts upon the three causes of action aggregating $301.06. From an order denying its motion for judgment in its favor notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Cobb, Wheelwright & Dille* and *H. C. Mackall,* for appellant.

*Mercer, Swan & Stinchfield* and *C. G. Krause,* for respondent.

TAYLOR, C.

Plaintiff shipped three carloads of grain over defendant's railway from stations in North Dakota to terminal points in Minnesota. When the grain arrived at the place of delivery it was inspected and weighed by the proper state officials, and the quantity then in the cars was found to be less than the quantity loaded therein as shown by the bills of lading. Plaintiff brought this suit to recover for the shortage and obtained a verdict. Defendant thereafter made an alternative motion for judgment notwithstanding the verdict or for a new trial. This motion was denied and defendant appealed.

The appeal is based upon alleged errors in the rulings in respect

to the admission of evidence, and in the instructions given to the jury as to the measure of damages.

1. The statutes provide that the State Railroad and Warehouse Commission "shall exercise general supervision over the grain interests of the state, and of the handling, inspection, weighing and storage of grain, * * * and shall make all proper rules and regulations for carrying out and enforcing * * * all laws of the state relating to such subjects." Section 4497, G. S. 1913. The statutes further provide:

"All weighmasters and weighers shall keep such records as may be prescribed by the commission, and shall furnish to any person for whom weighing is done a certificate under his hand, showing the amount of each weight, the number and initial letter or other distinctive mark of each car weighed, place and date of weighing, and contents of car. Such certificate shall be *prima facie* evidence of the facts therein certified." Section 4463, G. S. 1913.

The commission has provided by rule that weighers shall "(a) examine each car very carefully before it is unloaded, and if found to be in a leaky or bad order condition make notations of same in weight record book and in remark column of daily report; also make a special bad order report on blank provided for that purpose."

The weighers who weighed the three cars in question made a notation as to the condition of each car indicating defects therein. The above rule and these notations were received in evidence over defendant's objection, and the chief controversy is whether such evidence was admissible.

Defendant contends that the certificates which section 4463 provides that the weigher shall furnish to the person for whom the weighing is done are competent evidence of the matters which the statute requires to be stated therein, but of nothing else. For the purposes of this case we may concede that such contention is correct, but it does not follow that the evidence received was inadmissible. The statutes require the issuance of such certificates, but they also give the commission general supervision over the entire subject matter of the handling of grain, authorize the commission to make all proper rules and regulations for carrying out and enforcing all laws

relating thereto, and require the keeping of such records as the commission shall direct. There is nothing in the law which limits the records to be kept to a record of the certificates required to be issued to the person for whom the weighing was done. On the contrary the provisions referred to clearly indicate that no such limitation was contemplated. Such certificates may properly be recorded in the record, but so may any other pertinent facts which the commission directs the weighers to note therein. Under the statutes, it was within the province of the commission to require the making of the notations in controversy, and to require them to be entered in the official record. The commission made such requirement and the notations were made and recorded in accordance therewith and are a part of the official record.

It is well settled that a record, which the duties imposed upon a public officer required him to make and which was made by such officer pursuant to and in the proper performance of such duties, is competent evidence of the facts properly recorded therein. Healy v. Hoy, 115 Minn. 321, 132 N. W. 208; United States v. McCoy, 193 U. S. 593, 24 Sup. Ct. 528, 48 L. ed. 805; 1 Dunnell, Minn. Dig. § 3347. It follows therefore that the official record containing the notations in question, or a duly authenticated copy thereof, was admissible in evidence.

By virtue of section 4463 certificates issued to the person for whom the weighing is done are competent evidence without other authentication than the signature thereto of the weigher issuing them, but this provision applies only to such certificates and not to other papers which are merely transcripts from the records. It appeared by the testimony of the state weighmaster that the documents offered in evidence, and which contained the notations in controversy, were copies of records in his office. They were not certified copies, and, if objected to upon that ground, would have been inadmissible unless they were certificates within the purview of section 4463, supra. But defendant expressly waived the objection that they were not properly authenticated as copies of the official records, and based its objection solely upon the ground that such notations were inadmissible in evidence because the statute did not expressly authorize the weigher

to incorporate them in his certificate. As already pointed out, they are a proper part of the record, even if not a proper part of such certificates, and such record is competent evidence. It follows that both the rule established by the commission and the copies of the records made pursuant thereto were properly admitted in evidence.

2. The bills of lading provided that in case of loss the amount of damage should be computed upon the basis of the value of the property at the place and time of shipment. The court instructed the jury to the effect that the measure of damages, in case there was a shortage for which plaintiff was entitled to recover, was the value of the nondelivered grain at the place of delivery, on the date of shipment, less the freight from the place of shipment. Defendant challenges the rule given by the court as not in accordance with the contract. Defendant's contention is not entirely clear, but apparently is to the effect that testimony as to value should have been confined to statements of the value at the place of shipment; and that it was not permissible to determine the value at the place of shipment, by taking the value at the place of delivery and deducting therefrom the expense of transporting the grain from the place of shipment to the place of delivery. The grain in question was what is known as no-grade. It was of such inferior quality that it did not come within any established grade having a definite market price. The evidence indicates that there was no established price for such grain ascertainable from the market reports, but that the value of each lot of no-grade grain was determined by an examination of the grain itself. There was evidence tending to show the value of the grain at the place of delivery and the expense of transporting it thereto from the place of shipment, but no direct evidence as to its value at the place of shipment. Under the evidence presented, the only practicable method of determining the value at the place of shipment was that adopted by the court, and the instruction given was correct.

3. The other questions raised are without merit and require no especial mention.

Order affirmed.