# UNITED STATES v. McCOY.

ERROR TO THE UNITED STATES CIRCUIT COURT OF APPEALS FOR
THE NINTH CIRCUIT.

No. 148.  Submitted January 28, 1904.—Decided April 4, 1904.

Official reports and certificates made contemporaneously with the facts
stated, and in the regular course of official duty, by an officer having
personal knowledge of them, are admissible for the purpose of proving
such facts.

On the trial of an action brought by the United States against the sureties
on a bond to secure the performance of a contract to carry mail, the
Government makes a prima facie case on producing a certified copy from
the books of the Auditor for the Post Office Department of the contractor
as a failing contractor, and showing the amount of his indebtedness,
telegrams from the local postmaster to the Postmaster General to the
effect that the contractor had abandoned the service, and the finding
of the Postmaster General that the contractor was a failing contractor.

THIS suit was commenced by the Government to recover an
amount alleged to be due on a bond to secure the performance
of a contract to carry mail. The defendants were McCoy, the

contractor and principal in the bond, and his sureties. The cause was put at issue by a general denial and was tried in November, 1899. The Government prosecuted error from a judgment of non-suit which was entered against it. The Circuit Court of Appeals for the Ninth Circuit decided that the trial court was "right in holding that the documents offered in evidence by the plaintiff were legally insufficient to make out a *prima facie* case for damages on account of the alleged entire failure of McCoy to perform the service provided in the contract." It was, however, held that a *prima facie* right to recover the amount of a fine of five dollars had been established. The judgment was, therefore, reversed and the case remanded for a new trial. 104 Fed. Rep. 669. A second trial took place in May, 1901. At that trial the case made by the Government was as follows: McCoy, being the lowest bidder, was awarded a contract for carrying the mails from July 1, 1890, to June 30, 1894, between the post office at San Francisco and certain railroad stations and steamboat landings, and executed the bond which was sued on. On May 3, 1893, the postmaster at San Francisco telegraphed the Post Office Department that, under a judgment rendered against McCoy, the sheriff had seized the wagons' used by him in executing his contract, and would sell them on May 5; that the probable result of this sale would be to render it impossible for McCoy to continue to perform his contract, and that some temporary arrangement would be necessary, and asking instructions in the premises. Three days later, on May 8, the postmaster telegraphed the department that the service had been absolutely abandoned by McCoy, and that a temporary arrangement had been made to last until the department could act. On the day after the receipt of this telegram (May 9) the Post Office Department addressed a letter to McCoy, care of Zevely and Finley, Washington, D. C., giving the substance of the two telegrams above referred to, and asking if McCoy intended to carry out his contract. On May 17 the department telegraphed the sureties on McCoy's bond, informing them that

McCoy had failed to perform his contract, and inquiring if they would assume the service. On the same day the department by telegram informed the postmaster at San Francisco that his action in providing a temporary arrangement for the performance of the service was approved. On May 18 a telegram was received by the department from one of the sureties of McCoy, saying that he, the surety, was unable to perform the contract, and requesting to be relieved from all future liability on the bond, because his signature thereto had been "improperly obtained." On the same day (May 18) a finding was made by the Postmaster General that McCoy was a failing contractor, this finding being evidenced by the following certificate:

"State of California. No. 76,475.

"Regulation wagon service, San Francisco, San Francisco County. Contractor, C. C. McCoy. Pay, $7,700.00.

"Whereas C. C. McCoy, contractor on this route under the advertisement of September 16, 1889, has failed to perform the service, he is hereby declared a failing contractor.

"W. S. BISSELL,
"Date, May 18, 1893.                    *Postmaster General*."

The department subsequently advertised for proposals for the remaining period of McCoy's term, and the same was let to one Popper, and a contract entered into with him on the subject. Thereupon the Auditor of the Post Office Department stated the account of McCoy as a failing contractor. That account charged on the debit side the sum paid for temporary service from May 5 to August 13, 1893, the date when the new contract was awarded, and also the difference between the amount stipulated to be paid in the McCoy contract and that which the Government had contracted to pay Popper, the new contractor, from August 14, 1893, to June 30, 1894, when the McCoy contract would have terminated. The account, moreover, stated a charge against McCoy of $5, the amount of a fine which had been imposed on him by the department during the third quarter of 1893. McCoy was cred-

ited with the whole sum which he would have earned had he performed his obligations, the balance to the debit being the amount sued for, $5,772.99. After the Government had shown the facts above stated, it rested its case, and the defendants offered no evidence whatever.

The Government then requested an instruction in its favor on the ground that a *prima facie* case of liability had been proven. Exception was taken to the refusal of the court to give this instruction.

The court charged the jury as follows:

"It will not be necessary for you to retire to consider this case. You can render a verdict from your seats. This is an action in which the Government sued to recover damages for breach of a mail contractor's bond—breach of the contract. The action is against the contractor and the sureties upon his bond. The Government claims damages for the total abandonment of the contract without having performed it, and as to that claim all the evidence that has been offered on the part of the Government is insufficient to prove that there was an abandonment, there being no testimony of any witness having knowledge of the fact that the contractor did fail. The evidence includes the statement of account made up by the auditing department of the Government, in which there appears to have been a fine of five dollars imposed upon the contractor for a particular failure, and in accordance with the decision of the Circuit Court of Appeals for this circuit that evidence is sufficient *prima facie* to entitle the Government to recover the five dollars, and the defendants here in open court have admitted liability for that five dollars. Therefore your verdict will be in favor of the Government for the sum of five dollars. I have prepared a verdict which you will select one of your number to sign as foreman, and that will be your verdict in the case."

To this instruction the Government saved an exception. From a judgment in favor of the defendants for all but five dollars of the amount claimed, the Government prosecuted

error. The Circuit Court of Appeals affirmed the judgment upon the authority of the ruling made by it when the case was previously before it. This writ of error was thereupon prosecuted.

Mr. *Assistant Attorney General Purdy* for the United States:

The various provisions of the United States statutes which are relied upon by the Government as authorizing the introduction of the documentary evidence offered by the Government in this case, and making such documents *prima facie* evidence of the facts therein recited are Rev. Stat. §§ 882, 889, 3849, 3962; Act of June 8, 1872, ch. 335, §§ 245–247, 251, as amended 1874, 1876, 17 Stat. 313, 314; 18 Stat. 235; act of August 3, 1882, ch. 379, § 22, 22 Stat. 216.

The documentary evidence was sufficient. Greenleaf on Evidence, §§ 483, 493; Taylor on Evidence, vol. 3, § 1591; Wharton on Evidence, vol. 1, §§ 639, 640; *United States v. Carr,* 132 U. S. 644, 653; *Evanston v. Gunn,* 99 U. S. 660, and cases cited on p. 665; *Bingham v. Cabot,* 3 Dall. 19, 38.

The certified copy of the records in the auditor's office of the Post Office Department of the account of C. C. McCoy, as failing contractor, for the amount of actual damages sustained by the United States, taken in connection with the other testimony offered, is *prima facie* evidence not only of the fact and the amount of the indebtedness, but also of the time when and the manner in which it arose. *Soule v. United States,* 100 U. S. 8, 11; *United States v. Stone,* 106 U. S. 525, 530; *United States v. Dumas,* 149 U. S. 278, 285. Cases on brief of defendants in error, distinguished.

Mr. *E. C. Hughes* for defendants in error:

The cases cited by the Government do not control this case, but see *United States v. Buford,* 3 Pet. 12; *United States v. Jones,* 8 Pet. 375; *Hoyt v. United States,* 10 How. 109; *United States v. Forsythe,* 6 McLean, 584; *United States v. Case,* 49 Fed. Rep. 270, in which it was held that transcripts and

written statements did not make out a *prima facie* case for the Government. See also *United States* v. *Corwin*, 129 U. S. 381; and as to presumptions, see *United States* v. *Carr*, 132 U. S. 644.

MR. JUSTICE WHITE, after making the foregoing statement, delivered the opinion of the court.

The assignments of errors and arguments at bar present two questions for decision. First. Were the copies of telegrams sent by the postmaster at San Francisco to the Post Office Department admissible in evidence? And, second, if they were, did the certified copy of the account of McCoy as a failing contractor from the books of the Auditor for the Post Office Department, the telegrams from the postmaster at San Francisco and the finding of the Postmaster General that McCoy was a failing contractor, make out a *prima facie* case for the Government? Concerning the first question it suffices to say that, although it is urged that the telegrams were not admissible because they were merely copies of copies, the originals being on file in the telegraph office from which the messages were sent, the record does not show that any ruling on this subject was insisted on in the trial court, and hence no exception was taken to the introduction of the copies. As the objection that the telegrams were not the best evidence because they were merely copies was susceptible of being cured, if insisted on, it follows that the failure to so insist and reserve the question was a waiver of the objection. It then remains only to consider whether, taking into view the whole case as made by the Government, a *prima facie* right to recover was established. Section 889 of the Revised Statutes is as follows:

"Copies of the quarterly returns of postmasters and of any papers pertaining to the accounts in the office of the Sixth Auditor, and transcripts from the money-order account-books of the Post Office Department, when certified by the Sixth Auditor under the seal of his office, shall be admitted as evi-

dence in the courts of the United States, in civil suits and criminal prosecutions; and in any civil suit, in case of delinquency of any postmaster or contractor, a statement of the account, certified as aforesaid, shall be admitted in evidence, and the court shall be authorized thereupon to give judgment and award execution, subject to the provisions of law as to proceedings in such civil suits."

The certified account from the books of the Auditor for the Post Office Department which was offered in evidence came clearly within this statute. The items in that account were ascertained and established in the regular course of official action by the department, and represented disbursements made in the ordinary course of business for temporary service and under the new contract, all of which was occasioned by the actual or assumed default of McCoy. The payments shown by the items, therefore, properly appeared on the books of the Treasury Department. The account was clearly therefore competent, at least, for the purpose of showing the amount of the indebtedness, if any, existing. *United States* v. *Stone*, 106 U. S. 525. As, however, the correctness of the items in the account depended upon proof of the fact of the delinquency of McCoy, the contractor, it remains to determine whether the evidence introduced by the Government at the trial *prima facie* established such delinquency; in other words, whether the evidence was sufficient, in the absence of proof to the contrary, to show that McCoy had totally abandoned his contract on May 5, 1893. The solution of this question depends upon the probative force of the official finding by the Postmaster General that McCoy was a failing contractor, based, as it was, upon the official report on the subject made to the department by the postmaster at San Francisco.

In *United States* v. *Dumas*, 149 U. S. 278, the court considered the act of June 17, 1878, 20 Stat. 140, chapter 259, paragraph 1, which provides: "That in any case where the Postmaster General shall be satisfied that a postmaster has made a false return of business, it shall be within his discretion

to withhold commissions on such returns, and to allow any compensation that under the circumstances he may deem reasonable." The facts were as follows: On August 11, 1888, the then Postmaster General made an order, reciting his "being satisfied" that Dumas had made false returns of business at the office of which he had been postmaster, and declaring that in the exercise of the discretion conferred by acts of Congress the commissions on such returns were withheld, and the compensation of the postmaster was fixed as stated in the order. As a result of this finding by the Postmaster General, an action was subsequently brought against the postmaster and his sureties, and it was decided that the order of the Postmaster General and the certified accounts of the Government, which were produced and which were founded upon such order, were held to be *prima facie* evidence of the balance due the Government.

Moreover, by section 3962 of the Revised Statutes it is provided that—

"The Postmaster General may make deductions from the pay of contractors, for failures to perform service according to contract, and impose fines upon them for other delinquencies. He may deduct the price of the trip in all cases where the trip is not performed; and not exceeding three times the price if the failure be occasioned by the fault of the contractor or carrier."

And the second section of the act of August 3, 1882, c. 379, 22 Stat. 216, provides as follows:

"SEC. 2. Whenever a contractor for postal service fails to commence proper service under the contract, or, having commenced service, fails to continue in the proper performance thereof, the Postmaster General may employ temporary service on the route, at a rate of pay per annum not to exceed the amount of the bond required to accompany proposals for service on such route, as specified in the advertisement of the route, or at not exceeding *pro rata* of such bond, in cases where service shall have been ordered to be increased, reduced, cur-

tailed, or changed, subsequent to the execution of the contract; the cost of such temporary service to be charged to the contractor, and to continue until the contractor commences or resumes the proper performance of service, or until the route can be relet, as now provided by law, and service commenced under the new award of contract, all acts or parts of acts inconsistent with the provisions of this act being hereby repealed."

These provisions, by necessary implication, declare that whenever the Postmaster General "is satisfied," from evidence presented to him, that conditions exist which justify the imposition of fines or the deciding that a postal contractor has abandoned the performance of his contract, the Postmaster General may act as authorized in such provisions. It would seem to be an appropriate act for the Postmaster General to make distinct official evidence of the fact of such finding, to be filed among the archives of his office. The pertinency of such an official finding was, as has been shown, recognized in the *Dumas* case; and, when coupled, as it is in the case at bar, with the reports upon which the finding in the certificate was based, we think the certificate was legally competent to establish *prima facie* the fact that McCoy had abandoned his contract. It was made the duty of the postmaster at San Francisco, by section 3849 of the Revised Statutes, to "promptly report to the Postmaster General every delinquency, neglect or malpractice of the contractors, their agents or carriers, which comes to his knowledge." The reports embodied in the telegrams in question on their face show that they related to facts which had come to the knowledge of the postmaster, bearing upon the delinquency of McCoy, particularly the ultimate fact of total abandonment by McCoy of his contract. The opinion in *United States* v. *Corwin*, 129 U. S. 381, contains a clear recognition of the competency, as evidence, of official communications of this character, when made to those higher in authority, as supporting and giving evidential weight to findings based thereon. The reports contained in the tele-

grams in question present an application of what is stated in the opinion in the *Corwin* case (p. 385) to be "the well-established rule that official reports and certificates made contemporaneously with the facts stated, and in the regular course of official duty, by an officer having personal knowledge of them, are admissible for the purpose of proving such facts."

> *The judgment of the Circuit Court of Appeals is reversed; the judgment of the Circuit Court is also reversed, and the cause is remanded to the Circuit Court for further proceedings in conformity with this opinion.*