## McMILLAN v. WATER ARCH FURNACE CO.

. (Circuit Court of Appeals, Seventh Circuit. January 4, 1910.)

PATENTS (§ 328*)—INFRINGEMENT—SMOKE-BURNING BOILER FURNACE.

The McMillan patent, No. 519,267, for a smoke-burning steam boiler furnace, is an improvement patent only, and is limited by the prior art, which discloses all the elements of the patent combination to the special arrangement, form, and capacity of the discharge flues; as so construed, *held* not infringed.

Appeal from the Circuit Court of the United States for the Eastern Division of the Northern District of Illinois.

Suit in equity by James McMillan against the Water Arch Furnace Company. Decree for defendant, and complainant appeals. Affirmed.

The appellant filed a bill in the Circuit Court to enjoin an alleged infringement by the appellee of letters patent No. 519,267, issued to the appellant May 1, 1894; and this appeal is from a decree, on final hearing of the issues, dismissing the bill for want of equity.

<hr>

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In the specifications of this patent the invention is stated to be "improvements in steam boiler furnaces," relating "to smoke-burning steam boiler furnaces," with the objects and general description of the invention thus stated:

"Its object is to secure the complete combustion of the carbon given off from burning heat generated by the burning gases.

"The invention has for its further object the protection of the boiler by the more equal distribution through it of the heat.

"The invention consists of the use of an inclosed fire box located below the boiler and separated therefrom by a brick arch and discharging the products of combustion into the combustion chamber through flues in a bridge wall of great thickness."

Drawings appear, of which figure 1 "is a transverse vertical section of the furnace," and figure 3 "is a vertical longitudinal section," as follows:

Fig 1

The further specifications, references to the drawings, and statement of claims are as follows:

"In order to secure complete combustion, it is necessary that a high temperature of the distilled gases be maintained. This is found exceedingly difficult of accomplishment when the roof or top of the fire box is the crown sheet of the boiler, as the water is necessarily of lower temperature than the burning gases, and, as they immediately come in contact with the boiler in the old style of construction, they are chilled to such an extent that their inflammation is checked and a cloud of black smoke can be plainly seen rolling back to the flue. Furthermore, it is necessary to provide not merely a supplemental supply of oxygen to complete the combustion of the gases, but means must be supplied not only for preventing the lowering of the temperature by the natural radiation, but for actually raising it for heating the supplemental air supply. The difficulties enumerated are overcome in my improved furnace, and the purposes set forth above are subserved in the manner hereinafter described.

"For the purpose of clearness, I have shown in the accompanying drawings the major features of an ordinary steam boiler furnace, comprising the boiler, A; the grate bars, B, the furnace front, C, and its side walls, c, and the feeding doors, D. The bridge wall, E, is of unusual thickness, being preferably not less than three feet thick. Its center reaches to the boiler and its upper surface is curved in arch form. A solid arch, F, that is an arch without perforations of the same height as the bridge wall, covers the entire fire box, extending from side wall to side wall and from the front wall, C, to the bridge wall, E. The outlet for the products of combustion is through the bridge wall; a multiple number of flues, e, of ample capacity being provided for this purpose. A supplemental air supply is provided for by means of ducts, G, G, extending through the side walls, c, c, and thence through the bridge wall below the apertures, e, discharge ports into the fire box being provided one directly below each of the apertures, e, as shown at H. By this construction the air is introduced into the furnace already well heated and immediately it mingles with the burning gases as they enter the flues in the bridge wall. The front wall, C, of the furnace is closed tightly around the front end of the boiler, A. Chambers, a, a, are formed by the construction described upon each side of the boiler and above the arch, F, of the fire box, these chambers being open at their rearward end and closed at their forward end so that there is no draft through them and the heat from the arch, F, which becomes very intense, is radiated to the boiler. When the furnace is in use the arch, F, quickly becomes heated to a high degree so that the gases

distilled from the fuel are not cooled by contact with it, on the contrary, its temperature is sufficiently high to stimulate combustion. The same is true of the walls of the apertures, e. These apertures, or flues, serve the purpose, in fact, of retorts, and all the conditions essential to perfect combustion are present; namely, combustible gases, an ample supply of oxygen and high temperature, and there issues from these retorts a perfectly white flame, giving off an invisible vapor. By preventing contact of the vapors resulting from combustion with the comparatively cool surface of the boiler until their combustion has become complete, perfect combustion is made possible; furthermore, the boiler itself is protected from the constant variations of temperature due to the exposure of its surface to the direct action of the flames, the heat from the arch being uniform and the combustion at the rear of the bridge wall being substantially without variation.

"I claim.as my invention—

"1. A steam boiler furnace having its fire box completely inclosed by masonry, and having discharge flues in tubular form and of such capacity as to secure free draft and insure complete combustion within the flues leading from its fire box through such masonry, substantially as described and for the purpose specified.

"2. In a steam boiler furnace the combination of a grate, side walls, a solid arch covering the fire box, a bridge wall extending to and joining the rear end of the arch, and flues, in tubular form leading from the fire box through the bridge wall and of such capacity as to secure free draft and insure complete combustion within the flues, substantially as described and for the purpose specified.

"3. In a steam boiler furnace the combination with a boiler, of a fire box, an arch, F, covering the fire box and separating it from the boiler, and a bridge wall extending to the arch and having flue openings, e, e, leading outwardly from the fire box, and air ducts leading from without the furnace and opening to the fire box below the flue openings, e, e, said bridge wall being of such thickness that the flue openings serve the purpose of retorts, substantially as described."

The opinion filed below rests the decree on noninfringement, under the limitations imposed by the proof of prior art and rulings of the Patent Office upon the application, as exhibited in the "file wrapper and contents." In so far as reference to the facts in evidence seems needful or useful mention thereof is made in the ensuing opinion.

Louis K. Gillson, for appellant.

John G. Elliott, for appellee.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

SEAMAN, Circuit Judge (after stating the facts as above). The specifications of the McMillan patent in suit (No. 519,267) state that the subject-matter of the invention is "improvements in steam boiler furnaces," that it "relates to smoke-burning steam boiler furnaces," and that its objects are (a) "complete combustion of the carbon given off from burning fuel while securing the full benefit of the heat generated by the burning gases," and (b) "the protection of the boiler by the more equal distribution through it of the heat." Numerous prior patents are in evidence, both domestic and foreign, purporting to be improvements in furnaces for steam boilers, for like object in burning the smoke without loss of heating efficiency; and each of the means or elements combined in the McMillan furnace is present in the combination of the Stevens patent No. 333,430, and in other patents to be mentioned, except as to the special arrangement, form, and capacity of the discharge flues. The claim of patentable novelty, therefore, is thus stated in the brief for appellant:

"While McMillan did not propose a single new element in his construction, he did propose a combination which was novel and operated on a new principle: and he did secure results superior to any which had been previously attained."

These discharge flues are described in claims 1 and 2 of the patent as "in tubular form" and "of such capacity as to secure free draft and insure complete combustion within the flues"; and the patentability of the combination rests, as we believe, on departure in this provision from the discharge flues in other furnace combinations of the prior art. Moreover, the Patent Office so ruled, in effect, upon the application in question, as the exhibit file wrapper and contents shows repeated rejections of the original claims upon reference to several of these prior patents (including the above cited Stevens patent) as anticipations, and that ultimate allowance was obtained after amending the claims by inserting the above-quoted statement of the functional capacity of these discharge flues in present claims 1 and 2.

The appellant's bill alleging infringement of this patent was dismissed in the trial court, as stated in the opinion there filed, upon the ground that no infringement appeared in the appellee's furnace. It was further contended, as the appellee contends on this appeal, that the patent was invalid for want of invention, and that issue is discussed in the opinion referred to. Determination thereof is not deemed needful, however, in our view of the indubitable force of the evidence of prior art to limit the scope of any invention which may arise under the patent, so that the claims can neither be interpreted broadly, as sought in the appellant's contention of novelty above quoted, nor as needful to uphold the present charge of infringement.

In the appellant's brief, the McMillan device is aptly described as consisting of—

"throwing a roofing arch of masonry over the fire box, extending this arch back to the bridge wall, making this bridge wall of very considerable thickness and carrying it up to the roofing arch and perforating it with commodious flues which, as he explains in his patent, perform the functions of retorts; and by introducing a supplemental supply of air in such manner as to mingle it with the burning gases as they enter these retort flues. The forward end of the boiler was located over the fire box, so that the heat radiating through the roof of the latter would be utilized in raising the temperature of the water, the rearward end of the boiler extending over the usual so-called combustion chamber located back of the bridge wall."

The fire box thus described appears in several prior patents, of like single fire-box type, having a roofing arch of masonry to protect the boiler from direct contact with the fire; and the bridge wall so appears and is without novelty, either in location, structure, or "thickness." For means to discharge the gases and smoke—common to all furnace patents, with variations in form and location—the claims describe "discharge flues in tubular form" (mentioned in the specification as "a multiple number," with three shown in the drawings), leading from the fire box through the bridge wall. Their function is stated to be twofold: (a) Clear passageway for the burning gases; and (b) retort action in consuming the smoke en route, by means of the heat retained in the bridge wall. The remaining provision is an air duct—

also shown in prior patents—which aids the burning of smoke in the flues through "a supplemental air supply."

The furnaces made by the appellee, which are alleged to infringe the several claims of this patent, unquestionably have these elements in like combination for like object, except as follows: That the fire box is of the double fire-box type, having two arches, and for the discharge means a single flue through the bridge wall is adopted, which differs in form and greatly exceeds in size the aggregate of the flues shown in the patent; and it has two discharge openings from the double fire box—one for each fire. Were the appellant's contention tenable that the patent combination was not only novel, but "operated on a new principle," and was entitled to complete protection against equivalents, it might well be conceded that these variations therefrom would furnish no escape from infringement. That contention, however, is predicated alone on the patentee's arrangement, form, and capacity of discharge means, and we believe the prior furnace patents referred to leave no room for the scope of invention claimed in its so-called retort action.

While the field of furnace art was crowded with devices to relieve the smoke nuisance, when the patentee undertook another improvement, it is undisputed that neither the prior attempts nor the devices in suit have completely solved the problem. Improvers in that direction are entitled, as of course, to all benefits conferred by the patent laws for any invention they disclose; but monopoly beyond the limits of invention is neither authorized nor just. So, whatever improvement was disclosed by the patentee in the above-mentioned provision, monopoly thereof must be limited to the actual invention; and to that end we deem it sufficient to cite a few of the prior patents, having pertinent discharge means in like combinations.

Stevens' (United States) patent, No. 333,430, has the single fire box and roofing arch, thick bridge wall, and numerous small discharge flues leading from the fire box, mainly extending through the bridge wall, but a portion extending upward through the roofing arch. It provides an air supply also "to perfect and intensify combustion."

Bowe's (United States) patent, No. 371,872, has no roofing arch for the fire box, but shows the thick bridge wall, with "two or more" tubular flues, described as extending through it from the fire box to discharge the smoke and gases, "concentrate the heat," and serve to "complete the combustion"; and the Pratt and Palmer (United States) patent, No. 312,655, shows both single and double fire box, with roofing arches, having a single discharge flue through the bridge wall.

Criner's (United States) patent, No. 246,943, has the inclosed fire box and a large flue passage in the bridge wall for the discharge, with a supply of air to complete combustion; and McIlhenny's (United States) patent, No. 328,133, has like elements in combination.

Heiser's German patent, No. 5,430 (of 1879) is for a furnace—not shown with a steam boiler, but stated in the specifications as adaptable therewith—shows a single fire box and extremely thick bridge wall, with discharge means of greater capacity than those of the McMillan patent, which are specified as "retorts" and have that function alike

with such patent, and are alike aided therein by a supply of air through air ducts.

Without extending this opinion by further references to the prior art, we believe it clearly appears therefrom that no interpretation of the claims in suit is authorized, which excludes other improvers from using discharge flues serving as well for the so-called "retort action" mentioned in the patent as their function; and therefore that the appellee's furnace, having a different form of structure within the prior art, does not infringe. Its double fire box, of another type in the art, has advantages in better regulation of the firing and thus regulating the discharge of smoke and gas; and its greatly enlarged single discharge flue, with an opening from each fire, is within such prior art, adapted to the type of furnace, and not an appropriation of the patentee's device.

The decree appealed from is therefore affirmed.