**BLAKESLEE et al. v. UNITED STATES.**

Circuit Court of Appeals, First Circuit.
June 25, 1929.

No. 2310.

Bingham, Circuit Judge, dissenting.

Peter W. McKiernan, of Providence, R. I. (John C. Going, of Providence, R. I., on the brief), for appellants Blakeslee and others.

Ambrose Kennedy and James T. Greene, both of Woonsocket, R. I. (James T. Greene and Greene, Kennedy & Greene, all of Woonsocket, R. I., on the brief), for appellants Kelly and Leary.

Joseph E. Fitzpatrick, Asst. U. S. Atty., of Providence, R. I. (John S. Murdock, U. S. Atty., of Providence, R. I., on the brief), for the United States.

Before BINGHAM and ANDERSON, Circuit Judges, and MORRIS, District Judge.

ANDERSON, Circuit Judge. On March 15, 1928, in the District of Rhode Island, seventeen persons were indicted for conspiracy, between September 15 and December 29, 1927, to violate the National Prohibition Act (27 USCA), by buying the Glenbrook Worsted plant on Mason street, Woonsocket, and fitting up it up as a distillery for making alcoholic liquor from molasses. Of these seventeen persons, one, Marchand, dropped dead the night before the trial began; the indictment against the two Meuniers, father and son, was nol. prossed; six failed to appear for trial; eight stood trial; Ralph H. Blakeslee, alias Borson, J. Edward Sabine, George Sabine, alias George Fowler, and John Soroka, alias John Smith (who lived in the vicinity of North Haven, Conn.), and Joseph E. Kelly, Frank C. Leary, Wilfred Daignault, and Dennis Walsh, of Woonsocket. Daignault and Walsh were acquitted. The six convicted have appealed to this court.

The place was raided by prohibition agents on December 29, 1927. Of the persons then arrested, Blakeslee, alias Borson, was the only one who appeared at the trial. The case was tried at length, with some 250 pages of evidence. Leif Nelson, alias Robert

16

W. Larson, took title to the mill, paying $7,-500 in cash, and giving back a mortgage of $62,500 to Gustave A. Frederichs, or to the Woonsocket Dyeing & Bleaching Company, the owner. In form, at least, Nelson leased the front part to defendant Frank C. Leary, who was supposed to operate there a weaving plant, for which he had purchased 10 looms; these at the time of the raid had not been set up. The front was partitioned off from the rear, in which was set up a large distilling plant. The molasses was purchased from the Boston Molasses Company, and shipped at first to a side track controlled by the witness Charles H. O'Donnell. Later Blakeslee, under the name of Borson, made arrangements with the elder Meunier, a wholesale grocer in Woonsocket, to buy molasses for the plant, paying therefor in advance in cash, generally in bills of $500 and $1,000 denominations. The molasses arrived on Meunier's side track and was transshipped to the distillery by a truck driven by the acquitted defendant Daignault.

The other defendant acquitted, Dennis Walsh, was a bookkeeper of the Fairmount Dye Works, Inc., who arranged with Larson for the purchase from the Woonsocket Supply Company on the credit of the Fairmount Dye Company of materials, costing over $900, for fitting up the distillery.

The case is presented to this court by separate counsel for two groups: (1) The Connecticut defendants, Blakeslee, the two Sabines and Soroka; and (2) the Woonsocket defendants convicted, Kelly and Leary.

The first assignment of the Connecticut defendants of error in the court's refusal to strike out the testimony of the two Meuniers is plainly untenable. The evidence that Blakeslee, under the name of Borson, arranged with the elder Meunier to purchase this molasses, receiving payment, in advance, in large bills, was, entirely apart from other evidence in the case, enough to connect the molasses thus purchased with the distillery.

The second assignment relied on by the Connecticut defendants, and the one most elaborately argued by their counsel, grows out of the evidence offered concerning the register of the Colonial Hotel. The landlady, May Martin, under summons duces tecum, produced this register, which was marked simply for identification, and testified that the pages from September 15, 1927, to December 29, 1927, had been torn out, and that she first noticed it that morning. She denied remembering a patron using the name of J. Edward Sabine registering on October 13 and 18, and again on December 4. She also denied remembering a patron signing the name of R. H. Borson registering on October 22,

November 1, November 12, November 21, and November 28, checking out a few days after each registration. She also denied any memory of a patron named George Fowler registering on December 1, checking out the next day, registering again on December 20 and checking out the next day. To questions as to whether she had ever seen Blakeslee or either of the Sabines, who were respectively required to stand in the courtroom, she replied, "I don't remember." No explanation was offered of the mutilation of the register. MacBrayne and Murphy, two prohibition agents, were required to stand, and to the question as to whether she ever saw either of these two men before she also replied, "I don't remember." Cross-examination was waived. The court stated to the witness, "You will remain in the courtroom until adjournment."

The next witness was the prohibition agent, Murphy, who testified that during the investigation he stayed at the Colonial Hotel about 15 times; that he showed Mrs. Martin his credentials and badge, and, accompanied by Inspector MacBrayne, examined the register and docket from October 1 to January 1. Refreshing his recollection by his own notebook, he testified as follows:

"First entry is under date of October 13, 1927. On that day the names of R. H. Borson and J. Edward Sabine, registered from New York City, occupied room No. 36 and checked out on October 14th, the following day. On October 18th R. H. Borson and George Fowler; they checked out on October 22d. On November 1st R. H. Borson checked in and checked out on November 3d. On November 5th R. H. Borson checked in, and checked out on November 8th. On November 12th R. H. Borson checked in, and checked out on November 16th. On November 21st R. H. Borson checked in, and checked out on November 28th. On November 28th R. H. Borson checked in, and checked out on November 30th. On December 1st George Fowler checked in, and checked out on November [sic] 2d. On December 4th J. Edward Sabine checked in, and checked out on December 5th. On December 20th George Fowler checked in, and checked out on December 21st."

This evidence went in without objection. Cross-examination was waived.

It is important to observe that, until the government closed its case, the evidence of the mutilation of the register and the secondary evidence of the names registered on some of the disappeared pages stood without objection. It was not until the government had closed its case that counsel for the Connecticut defendants deemed it wise to raise any

objection either to the evidence of mutilation or of the registration of Blakeslee and the Sabines. Under such circumstances, the motion to strike out was addressed merely to the discretion of the court. Diaz v. United States, 223 U. S. 442, 450, 451, 32 S. Ct. 250, 56 L. Ed. 500, Ann. Cas. 1913C, 1138; United States v. McCoy, 193 U. S. 593, 595, 24 S. Ct. 528, 48 L. Ed. 805; York Mfg. Co. v. R. Co., 3 Wall. 107, 113, 18 L. Ed. 170; Doane v. Glenn, 21 Wall. 33, 35, 22 L. Ed. 476; Schlemmer v. Buffalo, Rochester, etc., R. Co., 205 U. S. 1, 9, 27 S. Ct. 407, 51 L. Ed. 681; Damon v. Carrol, 163 Mass. 404, 405, 40 N. E. 105; 1 Wigmore, Ev. 52–62, § 18.

At the close of the government's case, various motions were made to strike out and to order verdicts for the defendants. Counsel for Blakeslee, the two Sabines, and Soroka said:

"I ask the court to strike from the record the register of the Colonial Hotel and all testimony connected with that register.

"The Court: Some one struck a rather vigorous blow at the Colonial Hotel register.

"Mr. McKiernan. That register, may it please your honor, as it stands now, does not and cannot assist this jury in ascertaining whether or not any one of the four defendants for whom I am appearing were at that hotel on any occasion, and even if they were at the hotel, it would show nothing except their presence in Woonsocket. In addition to that, if the court please, I move to strike out the testimony of Mr. MacBrayne and Mr. Murphy as to what they read from that record when they went to Woonsocket to examine it."

Later, when arguing that a verdict of not guilty be ordered for J. Edward Sabine, the following colloquy occurred:

"Mr. Fitzpatrick: You are not saying telephone calls, are you? There was evidence by Mr. Murphy and Mr. MacBrayne, relative to the register of the Colonial Hotel, that on various dates J. Edward Sabine registered there; on October 13th he registered with R. H. Borson there, and that J. Edward Sabine registered there on December 4th, and on other dates with men that are in this courtroom.

"Mr. McKiernan. Even admitting that, that simply shows an acquaintance, and registering in the same hotel—

"The Court: There is some evidence there, Mr. McKiernan, I cannot say that there is not, and for that reason the court will have to deny your motion and note your exception."

This motion, thus argued, was denied by the court, and we think properly. It should be noted that the register was not admitted; it was only marked for identification. It is also of significance that the secondary evidence of Murphy, supra, of the registration of Blakeslee under the name of Borson, of J. Edward Sabine and George Fowler, the alias of George Sabine, was admitted without any objection. If counsel for the Connecticut defendants had made seasonable objection that secondary evidence of unidentified signatures was incompetent, even to prove the rather remote fact of their presence in Woonsocket on the dates named, what course the government would have taken to explain the mutilation of this register we cannot know. That some person in preparation for this trial had caused this mutilation was a fair inference.

And the motion, after the government had closed its case, failed to bring to the attention of the trial judge the ground (now elaborately argued) that unidentified signatures in a hotel register are incompetent. The motion simply was to strike out the register, which was not in, and "all testimony connected with that register." This would include Mrs. Martin's testimony concerning its mutilation, as well as Murphy's as to what he had found in the unmutilated register.

Moreover, the evidence of the contents of the unmutilated register had no significance, except to show the presence of Blakeslee and the two Sabines in Woonsocket on the dates named by Murphy. Blakeslee and J. Edward Sabine are shown otherwise to have been in Woonsocket. Blakeslee was arrested at the time of the raid; J. Edward Sabine was shown to have been ill at the Woonsocket Hospital, and to have been visited there by Blakeslee. Under these circumstances, the belated motion to strike out, without stating the only reason on which it could be soundly grounded, was properly denied.

See Robilio v. United States, 291 F. 980, where the court says:

"It is a commonplace that the overruling of an objection whose ground is not stated is not reviewable as of right."

Compare also 291 F. 981, where the effect of the amendment of 1919 to section 269 of the Judicial Code (28 USCA § 391) is discussed. White v. United States (C. C. A.) 30 F.(2d) 590; Redmond v. United States (C. C. A.) 8 F.(2d) 24; Weinstein v. United States (C. C. A.) 11 F.(2d) 505; Quigley v. United States (C. C. A.) 19 F.(2d) 756.

The court admitted evidence from the telephone company's employees of the numbers of the telephones listed in Woonsocket to the defendant Joseph E. Kelly and the

Glenbrook Mills, and in North Haven, Conn., listed to Blakeslee, J. Edward Sabine, and George Sabine, and of various calls between these telephones within the period covered by the alleged conspiracy, without identification of the persons thus communicating. This is alleged as reversible error. We think it was competent, even if a remote fact, to show means of long-distance communication among the alleged conspirators. For this purpose, the strict identity of persons speaking over the telephone was not necessary. The case is thus distinguished from such cases as American & British Mfg. Corp. v. New Idria Quicksilver Mining Co. (C. C. A.) 293 F. 509, 519, 520, and cases there cited. There the question was of the significance on contractual rights of actual communications.

At the end of the government's case, the four Connecticut defendants rested, without offering evidence. The four Woonsocket defendants offered evidence, and (as stated above) two of the four were acquitted. The Connecticut defendants asked the court to rule that no evidence adduced after they rested could be considered against them. The court declined so to rule. We think that this ruling was correct. The case on trial was for conspiracy—an integer. In support of their contention the defendants invoke the familiar rule that declarations and statements, made by a coconspirator after the conspiracy has terminated, are inadmissible as against the other conspirators. The rule is inapplicable to sworn testimony given by coconspirators and their witnesses of transactions before the termination of the conspiracy. No decision is cited under which any court has laid down the doctrine now invoked by these defendants. We decline to adopt it.

The only appellants who took the stand were Leary and Kelly. Their assignments of error in the court's refusal to order verdicts in their favor are plainly untenable. But they join with the other defendants in alleging error in the admission of various papers found in the distillery plant at the time of the raid, and identified by an expert in handwriting as made in the handwriting of Blakeslee and Leary. These exhibits contain entries which, arguably at any rate, tend to show the names and relations of some of the coconspirators; they are like written statements of coconspirators made during the period covered by the conspiracy. They are plainly competent.

None of the other assignments call for discussion.

The judgments of the District Court are affirmed.

BINGHAM, Circuit Judge, dissents.