AYO v. HOLZENTHAL

(April 18, 1932. Opinion and Decree.)

562

Edward S. Spiro, of New Orleans, attorney for plaintiff, appellee.

William A. Green and L. Walter Cockfield, of New Orleans, attorneys for defendant, appellant.

JANVIER, J. On or about November 22, 1930, while plaintiff, a tenant of defendant, was engaged in scrubbing one of the floors in the rented premises, a piece of plaster fell from the ceiling, striking her on the back. She was rendered unconscious and was taken to the Charity Hospital. She refused to remain at the hospital and returned home that day. Two days later, finding that she was still suffering pain, she returned to the hospital and remained there until December 12th, at which time she was discharged.

In her petition plaintiff claims that she sustained not only a lumbo sacral strain, but also that a miscarriage resulted. She says that at the time she had been pregnant for a period of approximately two months.

For such injuries as plaintiff actually sustained defendant is liable.

In Plescia v. Le Roy, 148 La. 316, 86 So. 824, the facts were as follows:

"* * * The wife of defendant's tenant * * * was injured by plaster falling from the ceiling of the premises so occupied."

The court, in holding the defendant landlord liable, said:

"The owner of a building is liable in damages for injuries caused to his tenant by failure to make the necessary repairs, due to the decay of his building, and of which he has knowledge. C. C. arts. 2693, 2695, 2715, 2716, 2717; C. C. art. 2322; Ciaccio v. Carbajal, 145 La. 869, 83 So. 73; Badie v. Columbia Brewing Co., 142 La. 853, 77 So. 768; Allain v. Frigola, 140 La. 982, 74 So. 404; Wise v. Lavigne, 138 La. 218, 70 So. 103; Schoppel v. Daly, 112 La. 201, 36 So. 322."

We are concerned only with determining the extent of those injuries.

The district court rendered judgment for $750 and, as we are convinced that the injuries, except the alleged miscarriage, were of a comparatively minor nature, we feel that our brother below must have come to the conclusion that a miscarriage actually was sustained. Whether he was correct in this is practically the only question now presented.

As proof of this particular item of damage, plaintiff introduced in evidence the records of the Charity Hospital of New Orleans, in which institution she had been confined for a period slightly in excess of two weeks, but, in addition to these records of the hospital, she offered no evidence except the testimony of one physician, who examined her some time after she returned home and who stated that, in his opinion, which was based on the records of the hospital, the miscarriage actually had occurred. Another physician, testifying on behalf of defendant, was of the contrary opinion, basing his views on the same reports.

Since the two doctors, in interpreting the reports of the Charity Hospital, came to different conclusions as to whether there had been a miscarriage, we have carefully examined those reports, and, while we feel incompetent to discuss in detail the various symptoms which seem to be indicated

thereby, we have reached the conclusion, after carefully examining the various entries, that the reports not only do not indicate a miscarriage, but, rather, prove the contrary; for, although it is true that in several places in the reports it is stated that a miscarriage was apparently threatened, nowhere do we find any mention of any such occurrence, and, in view of the minuteness of detail with which the reports were prepared, we cannot believe that, had such an event taken place, no mention would have been made thereof on the said reports.

In the argument before us there was raised the question of the admissibility in evidence of the Charity Hospital reports in the absence of any physician to identify them, or to testify as to the correctness of the entries made therein. It appears that these records were offered in evidence by plaintiff herself and no objection was made thereto. While it is true that Charity Hospital records constitute hearsay evidence, we do not feel that they should be excluded by the appellate court when they have been admitted without objection in the court below, particularly where they are detrimental to the interests of the party who introduced them.

In Dolan v. Metropolitan Life Insurance Co., 11 La. App. 276, 123 So. 379, we reached the conclusion that similar records are nothing more than hearsay evidence and should be excluded, if objected to. Here, as we have said, no objection was made. In Abelleira v. Johnson Iron Works Co., 18 La. App. 310, 137 So. 908, we held that such records, if not objected to, are admissible in evidence. In Wigmore on Evidence, Vol. 1, page 173, sec. 18, we find that:

"The initiative in excluding improper evidence is left entirely to the opponent—so far at least as concerns his right to appeal on that ground to another tribunal. The judge may of his own motion deal with offered evidence; but for all subsequent purposes it must appear that the opponent invoked some rule of evidence. A rule of evidence not invoked is waived."

In Diaz v. United States, 223 U. S. 442, 450, 32 S. Ct. 250, 252, 56 L. Ed. 500, Ann. Cas. 1913C, 1138, the Supreme Court of the United States considered an objection made in the appellate court to evidence which, in the trial court, had been offered by the party who later objected to its admissibility. The objection was made on the ground that it constituted hearsay. The court, in discussing such evidence, said:

"But it was not admitted without his consent, but at his request, for it was he who offered it in evidence. So, of the fact that it was hearsay, it suffices to observe that when evidence of that character is admitted without objection, it is to be considered and given its natural probative effect as if it were in law admissible. Damon v. Carrol, 163 Mass. 404, 408, 40 N. E. 185; Sherwood v. Sissa, 5 Nev. 349, 355; United States v. McCoy, 193 U. S. 593, 598, 24 S. Ct. 528, 48 L. Ed. 805, 807; Schlemmer v. Buffalo, etc., Ry. Co., 205 U. S. 1, 9, 27 S. Ct. 407, 51 L. Ed. 681, 685; Neal v. Delaware, 103 U. S. 370, 396, 26 L. Ed. 567, 573; Foster v. United States, 101 C. C. A. 405, 178 F. 165, 176."

If, then, the evidence was admitted without objection, and, furthermore, was offered by the party against whose interests it now appears to be, although it may have been hearsay, nevertheless it is in the record and must be considered.

The physician who testified for the defendant was very convincing in his testimony to the effect that, as a matter of fact, no actual pregnancy had been shown to exist. He gave it as his opinion that the passing of one menstrual period did not conclusively show pregnancy, particu-

larly where, as in the instant case, the patient was a victim of a chronic condition described here as "P. I. D., or pelvic inflammatory disease," which condition sometimes causes the passing of periods and later the discharge of blood, which would somewhat resemble an abortion, or miscarriage, in the earlier stages of pregnancy.

The testimony of plaintiff herself on this question is not at all convincing. The allegations of her petition as to the day on which the abortion had taken place were shown to have been entirely in error and, after an amendment in which she alleged that December 12, 1930, was the correct date, the records of the hospital were examined, and it appeared from them that on that very day she had been discharged. Her contention was that the abortion had taken place in the hospital, and it cannot be believed that if, for nearly two weeks, she had remained in the hospital primarily because of a threatened abortion, she would have been discharged from the hospital on the same day on which she alleges the abortion finally took place.

In view of the fact that we have reached the conclusion that the miscarriage, which forms the gravamen of plaintiff's complaint, was not actually suffered, we feel that the amount awarded below must be reduced.

While it is true that in no one damage suit can a standard of payment for injuries be set which will be applicable in any other, nevertheless we must, to some extent, be guided by what has been awarded in other cases for similar injuries and, bearing this in mind, we have examined with interest the awards made in two cases cited by counsel for defendant. In Favalora v. N. O. Ry. & Light Co., 143 La. 572, 78 So. 944, an award of $200 was increased by the Supreme Court to $300. The court said:

"The evidence shows that plaintiff was in a very nervous condition, and that symptoms of abortion manifested themselves. But the proof does not convince us that there actually was an abortion, and it would serve no useful purpose to detail in this opinion the facts bearing upon that issue. Suffice it to say that our appreciation of the evidence is that plaintiff did suffer a nervous shock, underwent some physical discomfort, but that the abortion upon which she largely bases her claim for damages is not established by a preponderance of evidence."

In Plescia v. Le Roy, supra, in which the injuries, except for the threatened abortion, were somewhat similar to those which we find here, the Supreme Court affirmed an award of $350. In that case we find that:

"Plaintiff was down on her knees scrubbing the floor, and a large section of the plastering fell and struck her on the middle and lower portion of her back, bruising and lacerating the flesh to the extent that she had to be carried to her bed, where she remained about three weeks. Her back had to be strapped with adhesive plaster, and she was under the care of a physician for some two months. She paid $10.55 for drugs and $50 doctor's bill on account of her injuries."

There is no doubt that plaintiff suffered considerable pain; that she was greatly inconvenienced and required to spend, as we have said, more than two weeks in the hospital. Nevertheless, we believe that $350 would be adequate compensation for such losses and physical injuries as have been caused her, and we will therefore reduce the amount of the judgment to that figure.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be, and it is, amended by reducing the amount thereof to $350, and, as thus amended, affirmed; defendant to pay all costs.