96 So.2d 509 (1957)
Roberta T. KEENER, Plaintiff-Appellant,
v.
FIDELITY AND CASUALTY COMPANY OF NEW YORK, Defendant-Appellee.
No. 8664.
Court of Appeal of Louisiana, Second Circuit.
June 28, 1957.
*510 Charles L. Barnett, Shreveport, for appellant.
Blanchard, Goldstein, Walker & O'Quin, Wilton H. Williams, Jr., Shreveport, for appellee.
AYRES, Judge.
Mrs. Roberta T. Keener instituted this action against the Fidelity & Casualty Company of New York, workmen's compensation insurer of the Arkansas-Louisiana Gas Company, seeking to recover the maximum death benefits provided under the Louisiana Workmen's Compensation Act, LSA-R.S. 23:1021 et seq., on account of the death, on June 12, 1954, of her husband, George Washington Keener, an employee of the Arkansas-Louisiana Gas Company.
Keener, who was sixty-eight years of age at the time of his death, was plant superintendent for his employer at its Mills Compressor Station at Rodessa, Louisiana, in which capacity he had been employed for approximately thirty-two years. In various capacities, he was in the employ of this employer for a total of forty-three years.
While so employed as plant superintendent on September 11, 1953, and while making repairs to a gas engine, his left hand was accidently caught in the gears of the engine and the two middle fingers, together with the index finger of that hand, were badly mangled, crushed and ground from their tips to near the wrist. Immediately thereafter he was conveyed to, and admitted for hospital treatment, in the P. & S. Hospital, Shreveport, Louisiana, where his injured fingers, or the fragments thereof, were amputated. After five days he returned home and two days later resumed his employment, the duties of which he continued to perform thereafter until his death, excepting the times he was hospitalized.
Due to infection developing in the injured hand Keener was again admitted to the hospital October 2, 1953, where he remained again for five days, and was readmitted December 22, 1953, where he was again hospitalized for a period of two days because of a painful shoulder which the attending physician characterized as a "frozen" shoulder due to an arthritic condition. He was further hospitalized from March 24th to March 31, 1954, and from May 26th to May 31, 1954, when corrective operations were performed on his hand by Dr. J. M. Gosslee. After the last of these operations he returned to work on June 1, 1954 and continued to work until the date of his death.
On June 11, 1954, Keener worked his usual shift ending at 3:00 o'clock, p. m. Mrs. Keener returned home about an hour later, found her husband sitting in a chair in the back yard and, upon her inquiry, he complained of feeling terrible, but after eating the evening meal he retired to bed about 8:00 o'clock. About 11:15 o'clock, p. m. Mrs. Keener was called by her husband who informed her he was sick, unable to get his breath and was dying, whereupon Mrs. Keener, accompanied by a daughter and son-in-law, placed him in a car and started to a hospital in Shreveport. He died en route before reaching Vivian.
The immediate cause of death was alleged to have been due to heart failure or coronary thrombosis or coronary occlusion, which condition was allegedly brought on or superinduced by the accidental injuries suffered by Keener to his hand, from the infection developing therein, the stress, strain and worry and emotional disturbance over his condition, and the various operations performed, as well as from the excruciating pain suffered as the result of said injuries, together with lack of sleep and rest, and, finally, from the breaking down of his heart on account of stress and strain of claimbing a hill about the plant in *511 connection with his work, and particularly during his day's work of June 8, 1954.
The contention of the defendant is that decedent died of natural causes in no way related to his employment and not from the accidental injuries sustained on September 11, 1953, or from any cause superinduced thereby or from any stress or strain of his work.
From a judgment rejecting plaintiff's demands she has appealed.
The issue presented for determination is one of causal connection between the accidental injuries sustained in the course and scope of decedent's employment and his death. More specifically the questions are:
(1). Was the immediate cause of the employee's death heart or coronary failure, and,
(2). If so, was the fatal heart or coronary attack caused or contributed to by either the accidental injury which he sustained to his hand or the stress and strain undergone in the performance of his duties as superintendent of his employer's compressor station.
Applicable to these issues are the following well settled principles of law:
1. The plaintiff in a workmen's compensation case bears the burden of proof and is required to establish his or her claim to a legal certainty by a reasonable preponderance of the evidence; establishment of a claim to the extent only of possibility or probability is not sufficient.
2. Conjecture and probability may not serve as a basis for a judgment in workmen's compensation cases.
The foregoing rules are so well established that citation of authorities seems unnecessary. However, some of the more recent cases enunciating these rules are:
Green v. Heard Motor Co., Inc., 224 La. 1078, 71 So.2d 849; Hogan v. Stovall Drilling Co., La.App., 55 So.2d 284; Roberts v. M. S. Carroll Co., La.App., 68 So.2d 689; Driggers v. Coal Operators Cas. Co., La.App., 73 So.2d 602; Smith v. International Paper Co., La.App., 73 So.2d 652; Robbins v. Chicago Mill Lbr. Co., La.App., 76 So.2d 635; Henderson v. New Amsterdam Cas. Co., La.App., 80 So.2d 438; Kraemer v. Jahncke Services, Inc., La.App., 83 So.2d 916; Braziel v. Pope, La.App., 86 So.2d 717; Fourchea v. Maloney Trucking and Storage, Inc., La.App., 88 So.2d 82; Davis v. Reynolds, La.App., 96 So.2d 368.
Considering the questions in the order enumerated, our review of the record leads to the conclusion that by reasonable preponderance of the evidence it has been satisfactorily established that the immediate cause of the employee's death was coronary thrombosis or coronary occlusion, and that, accordingly, the first of these questions should be answered in the affirmative. When awakening on the night of her husband's death plaintiff observed her husband's condition, and, in testifying, detailed the signs and symptoms experienced by him only a short time prior to his death. These consisted of severe pain in the chest, shortness of breath, smothering, weakness, paleness, nausea, vomiting and profuse perspiration.
After Keener's collapse en route from his residence and before reaching Vivian, services of an ambulance were sought in a funeral home there for the purpose of completing the trip to the hospital. While at the funeral home Dr. Wayne Shepherd, a local physician, was called and, on his arrival, attempted to revive Keener by the administration of drugs, but his efforts were of no avail. From his examination and history given him at the time, as well as from his observation of the process of embalming conducted by the undertaker, the doctor was of the opinion that death was caused by some cardiac disturbance a coronary thrombosis or occlusion. It was particularly noted by him that an abnormal amount of coagulated or clotted blood was taken from the right side of the *512 heart through the femoral vein which was consistent with his conclusion. The doctor's testimony was corroborated in this respect by other medical testimony contained in the record.
Nevertheless, defendant contends that plaintiff has failed to discharge her burden of proof by establishing, through a preponderance of evidence, that either the accident originally sustained or the stress and strain of the employee's work at the station had any causal connection with his death.
Testifying for plaintiff, in addition to Dr. Sheperd, were Drs. Frank T. Dienst, Jr. and S. W. Boyce. Dr. T. J. Smith, who attended the employee and performed the operation following the injury of September 11, 1953, was not called by plaintiff but by defendant. Dr. J. M. Gosslee, who performed the subsequent corrective operation at the Highland Sanitarium, was not called as a witness, nor was his testimony obtained by deposition. No reason has been advanced why his testimony was not obtained.
The principle is well established in the jurisprudence of this state that upon plaintiff's failure to secure the testimony of a physician who, at his own request, has examined and/or treated him, in the absence of some explanation for his nonappearance at the trial, it must be presumed that such testimony would be adverse to plaintiff.
White v. Travelers Insurance Co., La. App., 94 So.2d 564; Walker v. Monroe, La.App., 62 So.2d 676; and the authorities therein cited.
Therefore, it could only be concluded that Dr. Gosslee's testimony would not have supported plaintiff's contention.
Neither was the hospital records and charts properly authenticated as a prerequisite to their introduction and filing in evidence. The records were never filed. Likewise, no reason has been advanced for the failure to make the necessary preliminary proof for the admission of these documents in evidence.
Of the doctors testifying only Dr. Shepherd saw Keener, and he saw him one time and that at the funeral home some 20 to 30 minutes following his death. Obviously, therefore, the opinions which they expressed were predicated upon information not of their own personal knowledge but information gained from other sources. Even with some personal knowledge Dr. Shepherd was unable to express an opinion supporting plaintiff's contention of causal connection between the employee's accidental injuries and/or his employment with his death. For example, in an excerpt from his testimony, and in answer to hypothetical questions, it was stated:
"Q. Doctor, would you assume that on September 11th, 1953, Mr. George Keener, a man who was sixty-seven years old, got his left hand caught in some gears and three fingers and the middle part of his hand up nearly to the wrist was ground off in the gear, and he suffered severe pain and shock to the extent that he turned white as a sheet and later developed symptoms of heart trouble, would you say that such a shock would be sufficient to precipitate coronary occlusion or coronary thrombosis or heart trouble? A. I think the added stress may have contributed something to it, but the way I understand it was, I believe the accident was some time in September, since you mentioned itI didn't remember the period of monthsand when his death was, was several months later. Now, if he had any latent cardiac trouble or arteriosclerosis, the added stress at that time may have had something to do with it. I wouldn't say. I am not sure about that, whether it would or not.

"Q. But, shock does frequently precipitate such an occurrence? A. Added stress from any cause, traumatic injuries, but what part it played several *513 months later I don't know, because I don't know anything about his history in the past, whether he had latent or possible heart disease or not.

"Q. Would you assume that this man suffered pain in his hand and shoulder continuously from the time he was injured up until June 8th, 1954, and during that time he underwent two corrective operations on his hand and lost considerable weight and on June 8th he climbed a hill in the performance of his duties, immediately after which he suffered shortness of breath and blueness around his neck and suffered severe pain in his chest, what would be your opinion as to whether or not such activity could cause or contribute to a man's death three days later from coronary insufficiency? A. I think at the time of the exertion, he climbed this hill, it is very possible he may have at that time had either a pulmonary embolism or a thrombus. Of course, embolism is nothing more than a fragment or a blood clot or thrombus that becomes detached and through circulation gets into the lung, and if there was actually blueness of the skin, cyanosis, it is pretty obvious there was a circulatory disturbance of the system involving the cervical area and the neck and it would either be in the lung or certain of the vessels. I would say possibly a pulmonary. And, if he had severe pain, either one would explain chest pain, and maybe pallor and weakness and may have had a cough, I don't know, but that sometimes goes along with it, and if there is an embolus in the lung usually there is some bloody sputum made. Certainly, shortness of breath and chest pain and weakness are symptoms of both and are precipitated usually by exertion or following exertion.
"Q. Assuming then that from this incident on June 8th that he suffered continually with pain in his chest and shortness of breath, what would be your opinion as to whether or not he had heart trouble at the time of this exertion? A. Well, that would be difficult to say. It would be difficult to say. You could have it either active or latent. If it was latent or inactive and if a person did a physical examination of him you could not detect anything organically or clinically wrong with the heart, but then again it would have been brought about by the exertion, but that is possible, and not knowing about his condition or never having examined him before or no history from any doctors that saw him before that, I don't know." (Emphasis supplied.)
Dr. Dienst was of the opinion the employee may have suffered some sort of coronary catastrophe at the time of the injury to his hand which contributed to his death. Dr. Boyce testified it was his opinion that Keener suffered a coronary attack at the time of the injury to his hand and that such an attack was the cause of his subsequent death. These opinions, as the witnesses so stated, were based upon the hospital records, charts, the allegations of plaintiff's petition and the death certificate.
As heretofore noted, the hospital records were never filed in evidence, and do not constitute a part of the record. But, from the information obtained from them, Dr. Dienst concluded that Keener developed a shoulder-hand syndrome about three months following the accident, which he believed to be an indication of heart damage at the time of the accident. From the same source of information Dr. Boyce drew and expressed the same conclusion. Defendant objected to the testimony of these physicians and questioned the basis upon which their opinions were predicated. For instance, preliminary to pressing these questions Dr. Dienst was asked:
"Doctor, I will ask you if you have had occasion to read and study and *514 analyze the hospital records and the medical record of Mr. George Washington Keener?"
To which he replied:
"I have, yes, sir."
To Dr. Boyce a similar question was propounded and a like answer was given. Since these hospital records were not in evidence it is impossible to ascertain what information they gleaned therefrom which caused them to form their opinions. In propounding the hypothetical questions the witnesses were asked to assume as true certain facts contained in these documents. The truth or correctness of their recitals was not established by either Keener's physicians, Dr. T. J. Smith and Dr. J. M. Gosslee, or by the nurses or other representatives of the hospital, or by any one who may have been able to have attested to the correctness of the information contained in such records. Notwithstanding that the record reflects that attention was directed by the trial judge to the importance and necessity of securing the necessary testimony for establishing these documents, no witness was called for that purpose. Under these circumstances the documents relied upon were hearsay and inadmissible. Accordingly, the opinion of the doctors based thereon is without probative value as neither opposing counsel nor the trial court were afforded an opportunity to determine the correctness of the information upon which the opinions were based.
In a similar situation with reference to records of a charity hospital in an action arising prior to the enactment of Act 90 of 1938, now LSA-R.S. 13:3714, as amended by Act 519 of 1952, such records were held inadmissible and the testimony of the medical experts based thereon was likewise held inadmissible. This act, however, has no application other than to records of charity hospitals.
In Gaines v. Acme Industrial Life Ins. Co., La.App., 155 So. 276, it was stated:
"The record of the Charity Hospital, which included a detailed statement of the treatment administered and a post mortem autopsy, were admitted in evidence over the objection of plaintiff's counsel, and, if the action of the court in allowing this evidence had been correct, it would doubtless have been an important factor in our consideration of the case, but under repeated rulings of this court the records of the Charity Hospital, when objected to, are inadmissible because they are hearsay; and the testimony of the defendant's medical expert based upon these records is, for the same reason, also objectionable and cannot be considered. Dolan v. Metropolitan Life Ins. Co., 11 La.App. 276, 123 So. 379; William v. Locicero (La.App.) 142 So. 856; Ayo v. Holzenthal, 19 La.App. 561, 141 So. 92."
To the same tenor is an expression contained in 58 American Jurisprudence, page 869, verbo "Workmen's Compensation", Section 451, reading:
"As in other cases, however, the value of the opinion of an expert witness is dependent on and is no stronger than the facts upon which it is predicated, and it has no probative force unless the premises upon which it is based are shown to be true."
One of the bases upon which Drs. Dienst and Boyce predicated their opinion was an assumption that the pain in Keener's shoulder, of which he complained when admitted to the hospital by Dr. Smith on December 22, 1953, was referred pain from a damaged heart to the shoulder. According to Dr. Smith, this assumption was erroneous. He testified Keener at the time did not have referred pain but actual pain originating in his shoulder and hand from an arthritic condition described as a "frozen" shoulder, and in his hand, from the injury.
Likewise, in several instances there was no proof of the allegations of plaintiff's *515 petition which plaintiff's witnesses may have taken into consideration in arriving at their conclusions, or, in some instances, such allegations were disproved. For instance, is is alleged that following the original accident plaintiff's hand became infected and from that he developed gangrene resulting in blood poisoning or septicemia. The attending physician testified to the contrary and denied that such condition existed and stated that, while Keener had a low grade infection, tests were run showing that no blood stream infection ever developed.
Neither was Dr. Gosslee nor his nurse called to substantiate plaintiff's allegations that in the performance of a second of a series of corrective operations the time consumed in such operation aggravated three hours and twenty minutes, or that during and immediately following Keener turned blue and cyanosed about the neck and face and suffered shortness of breath.
Neither does the proof substantiate plaintiff's allegations as to the length and grade of the hill upon which the compressor station was located and over which it is alleged the employee walked to reach meters and pressure gauges. The proof shows that instead of a distance of 600 to 800 feet, in reality, it was approximately one-third that distance. And, instead of a grade of 35 to 40 degrees, there was only a moderate slope, over which the photographer testified he walked several times, in taking pictures which were offered in evidence, apparently without exertion. Nevertheless, this was the same plant and the same grounds at which and over which the deceased had worked and walked for some thirty-two years. There was no unusual or out of the ordinary labor, tension or exertion or undue effort on deceased's part on June 8, 1954 when it was alleged he suffered with an ailment of his heart.
As to the employee's complaint of pain in the pit of his stomach, Dr. Charles Holt, from his examinations and treatments in December, 1952 and during September, 1953, gives a probable account thereof in explaining that the decedent had a duodenal ulcer in that area of his stomach.
It is a cardinal rule that for an expert opinion to be of value the reality of the state of facts upon which such an opinion is predicated must be shown to exist. An opinion based on assumed facts, varying materially from the actual facts, is without probative value and is insufficient to sustain a judgment. Neither is a medical opinion entitled to weight which is predicated upon an incorrect assumption of facts. Bayless v. Jefferson Standard Life Ins. Co., La.App. 148 So. 465; Grober v. Grace Logging Co., 18 La.App. 185, 137 So. 613; 32 C.J.S., verbo Evidence, paragraphs c and d, § 569, pp. 396-401.
Therefore, the opinions of Drs. Dienst and Boyce are insufficient to establish a causal connection between the employee's accidental injury or any stress or strain of his employment with his death. Should their testimony be otherwise admissible there would be only a showing of a mere possibility, or not more than a probability, of such causal relationship, and such proof is insufficient.
However, to the contrary is the opinion of Dr. T. J. Smith, who attended the employee for approximately six months following the original accident, who testified that during that period Keener had no symptoms of any heart disturbance or coronary trouble, nor did he complain of shortness of breath. A similar opinion was expressed by Dr. M. D. Hargrove, a heart specialist, the purport of which is that there was no relationship between the accidental injuries sustained by the employee on September 11, 1953, or to any stress or strain in his work on June 8, 1954, and his death four days later.
The heart attack of which Keener died is shown to have first manifested itself about 11:15 o'clock p. m., June 11, 1954, approximately eight hours after he had completed his day's work, several hours *516 after he had eaten his evening meal, and about three hours after he had gone to bed.
Our most painstaking review of the record has led us to the conclusion that the record does not establish by that preponderance of evidence, and to that degree of certainty, any causal relationship between Keener's employment and his accidental injuries and his death that would warrant a judgment holding his death resulted in the course and scope of his employment or from causes arising within his employment.
We fail to find any error in the judgment appealed and, accordingly, it is affirmed at appellant's cost.
Affirmed.