SUPREME LODGE OF KNIGHTS OF PYTHIAS *v.* BRADLEY.

Opinion delivered December 10, 1904.

INSURANCE—DEATH RECEIVED IN VIOLATION OF CRIMINAL LAW.—A death received while retreating from a personal difficulty in good faith, and not for the purpose of gaining a vantage ground to renew it, although deceased began the assault with a weapon capable of inflicting great bodily harm, was not a death received while in violation of any criminal law, within a policy of insurance providing that if the assured's death should be received in a violation or attempted violation of any criminal law, then the amount to be paid on the policy should be in proportion to the whole amount as the matured life expectancy is to the entire expectancy at date of admission of such member.

Appeal from Ashley Circuit Court.

ZACHARIAH T. WOOD, Judge.

Affirmed.

STATEMENT BY THE COURT.

On January, 1901, at the entrance of the courthouse in Hamburg, Charles O. Morscheimer shot and killed Charles H. Bradley.

The appellee is the widow of Bradley and the beneficiary in a policy for $1,000 in the appellant's order, a fraternal insurance association. The facts, as reflected through the verdict of the jury, were: Ill-feeling over a trivial matter existed between Bradley and Morscheimer, at least on Bradley's part. On the morning of the tragedy they came face to face at the north entrance of the courthouse, as Morscheimer was entering, and Bradley leaving, the building. Some words passed, and Bradley struck Morscheimer on the ear with a piece of iron held in his hand. Morscheimer staggered or stepped back a few paces, drew his pistol, and commenced firing on Bradley. The first shot, or one of the first shots, passed through the right breast, and came out of the fleshy part of the arm near the shoulder joint, and was not a fatal wound, and did not cause the death. Immediately upon Morscheimer opening fire, Bradley turned and ran back into the courthouse, and fell into the arms of the sheriff, as he was attempting to enter the sheriff's office, twenty-four feet south of the entrance where the rencounter began. He had received a fatal wound in the back, entering below the right shoulder blade and ranging diagonally through the body to the left side, and not coming out. He expired almost immediately. Appellee insists from the nature of the wound that it was received just as Bradley was turning into the sheriff's office from the hall in which he was running. Whether that contention is sustained or not, it was evidently received after he turned and fled from the rencounter. The verdict necessarily implies it, and the evidence fairly establishes it.

The contract of insurance contained the following clause: "If the death of any member of the endowment rank heretofore admitted into the first, second, third or fourth classes, or hereafter admitted, shall result from suicide, either voluntary or involuntary, whether such member shall be sane or insane at the time, or if such death shall be caused or superinduced by the use of intoxicating liquors, narcotics or opiates, or in consequence of a duel, or at the hands of justice, or in violation or attempted

violation of any criminal law, then the amount to be paid on such member's certificate shall be a sum only in proportion to the whole amount as the matured life expectancy is to the entire expectancy at date of admission to the endowment rank."

The court gave the following instructions: "4. Even though you believe from the evidence that Bradley assaulted Morscheimer and brought on the rencounter between himself and Morscheimer, yet if you further believe from the evidence that at the time Bradley was killed he had in good faith abandoned the rencounter, and was in good faith retreating to avoid further difficulty with Morscheimer, then he was not, at the time he was killed, violating or attempting to violate any criminal law, and your verdict will be for plaintiff for amount sued for."

The court refused to give the following instruction asked by appellant:

"5. The jury are instructed that if they believe from the evidence in this case that C. H. Bradley, on the morning of January 1, 1901, made an assault on Charley Morscheimer with a weapon with which he was capable of inflicting great bodily harm on him, and that, as a result of said assault, said Bradley was killed, it makes no difference whether he was trying to escape, or was continuing the assault, when he received the mortal wound, if the assault and the shooting were parts of the same difficulty."

The jury rendered a verdict for the plaintiff for $1,000 and interest. Judgment was entered thereupon. Appellant saved its exceptions, and brought the case here.

If the fourth instruction above set out was the law, and the requested fifth instruction not the law, there is no error prejudicial to appellant; otherwise, there is.

*Pugh & Wiley,* for appellant.

*Robert E. Craig,* for appellee.

HILL, C. J., (after stating the facts.) Is a death received while retreating from a personal difficulty (and not retreating for the purpose of gaining a vantage ground to renew it), where the recounter is begun by an assault by the deceased upon his slayer with a weapon capable of inflicting great bodily harm or

death, according to its use, a death within the meaning of an insurance clause exempting against liability for a death "in violation or attempted violation of any criminal law?"

Instruction numbered four said it was not, and the appellant asked instruction numbered five that it be declared within the exemption. The cases on this exact question are not numerous, but they are well considered, and come from courts of high standing. The following authorities sustain the instructions given by the circuit court. *Harper* v. *Phoenix Ins. Co.,* 19 Mo. 506, reiterated in *Overton* v. *Ins. Co.,* 39 Mo. 122; *Cluff* v. *Mut. Benefit Life Ins. Co.,* 13 Allen (Mass.), 308, reaffirmed in *Cluff* v. *Mut. Benefit Life Ins. Co.,* 99 Mass. 318; and *Bradley* v. *Mut. Benefit Life Ins. Co.,* 45 N. Y. 422.

It is insisted that, if there is a causative connection between the assault and the death, then the death is the proximate result of the assault. Such reasoning contains the fallacy that an assault will be repelled with more than lawful force. Such is often, perhaps usually, the rule where blood is hot, and the strength sufficient, or the weapon handy enough. But such is not the result naturally to be expected under the law. An assault calls for a repulsion of it by just such force as necessary to overcome it, and more than that is unlawful, and unlawful consequences are not to be presumed to follow the act. When Bradley attacked Morscheimer with a piece of iron, then Morscheimer was justified in overcoming that attack, and, if necessary to overcome it, in taking Bradley's life, and a death resulting while so lawfully resisting the attack would be the natural result expected to flow from such attack, and there would be a causative connection between the assault and the death; in other words, the attack would then be the proximate cause of the death. Cases applying the doctrine of causative connection between an unlawful act and the death, the latter being held to be within the consequences flowing from the unlawful act, are cited. *Bloom* v. *Franklin Life Ins. Co.,* 97 Ind. 478; *Murray* v. *N. Y. Iife Ins. Co.,* 96 N. Y. 614, and others of kindred nature in appellant's brief.

The doctrine of the cases referred to as sustaining this instruction does not impinge upon the established principles announced in those relied upon by appellant. For instance, take

the case of a husband killing the paramour of his wife; if caught in the act of adultery, the paramour dies "in violation of law;" if killed subsequently, he dies as the natural result of his unlawful act, in consequence of it, and as a consequence naturally to be expected, and this is true whether killed an hour or a year after the adultery, and yet it is held, and properly so, that the paramour is not killed "in violation of law," within the meaning of an insurance contract. *Goetzman* v. *Connecticut Mutual L. Ins. Co.*, 3 Hun (N. Y.), 515.

There must be a line drawn somewhere between consequences proximately, and those remotely, flowing from an unlawful assault; and the safe place to draw that line is where the law draws the line of lawful resistance to the unlawful assault. In a similar case to this one the Court of Appeals of New York, through Mr. Justice Rapallo, said: "So long as the evidence falls short of establishing that the homicide was legally justifiable, I can see no safe rule by which the court could be guided in deciding that the provocation proved was the cause of the killing, and in withdrawing that question from the consideration of the jury." *Bradley* v. *Ins. Co.*, 45 N. Y. 422. In this case Bradley fled from the conflict, and received his death wound in the back while escaping. Clearly, Morscheimer was not legally justified in taking Bradley's life then, and his act in so doing was unlawful. Therefore, the first violation of the law by Bradley was not the proximate cause of his death, but the subsequent unlawful act of Morscheimer in shooting his retreating assailant was the proximate cause. Therefore the instruction was correct, and the judgment is affirmed.

BATTLE and McCULLOCH, JJ., dissenting.