### WOODMEN OF THE WORLD v. LULA McCOSLIN ET AL.

#### Decided March 12, 1910.

**1.—Contract of Insurance—Death in Personal Difficulty—Charge.**

In a suit upon a contract of life insurance, the defense being that the insured violated the contract of insurance by making an unlawful assault with a pistol upon a third party whereby a duel resulted and the insured was killed, charge considered and held, when considered and construed as a whole, not subject to the objections that it ignored said defense; nor that it assumed, without warrant in the evidence, that the third party was the aggressor; nor that it submitted an issue (that of apparent as distinguished from actual danger) not raised by the evidence.

**2.—Charge—Burden of Proof.**

A mere instruction to the jury that certain issues were to be determined by a preponderance of the evidence is not equivalent to an instruction as to the burden of proof, and in the absence of such an instruction when the evidence is conflicting upon a material issue a litigant has the right to request and it is the duty of the court to give a charge placing upon the proper party the burden of proof.

**3.—Contract of Insurance—Death in Personal Difficulty.**

The insured in a policy of life insurance has the right to act in self-defense under a reasonable apprehension of danger from an assault by a third party, and by so doing he will not forfeit his rights under such policy containing a stipulation that the policy would be void in the event the insured should die in consquence of a duel or of the violation or attempted violation of the laws of the State.

Appeal from the District Court of Limestone County. Tried below before Hon. H. B. Daviss.

*Harper, Jackson & Harper* and *Sleeper, Boynton & Kendall,* for appellant.

*Walter Angus Keeling* and *Williams & Bradley,* for appellees.

BOOKHOUT, ASSOCIATE JUSTICE.—This is a suit brought by appellees against appellant, on a beneficiary certificate for $1,000, issued by appellant, to one J. T. McCoslin, a member of the Woodmen of the World, on the 21st of March, 1905; and also for the sum of $100, provided for in said certificate as a fund to erect a monument over the grave of the member. The certificate was payable upon the death of said J. T. McCoslin to Lula McCoslin, his wife, and children, three-fourths, and to J. H. McCoslin and A. T. Martin one-fourth.

The plaintiffs in the suit are Lula McCoslin and her children and J. H. McCoslin and A. T. Martin. The plaintiffs' petition sets out the death of J. T. McCoslin on September 2, 1907, and due notice thereof to the defendant and refusal of defendant to pay.

The defendant pleaded a general denial, and, specially, that said certificate provided that in the event the said J. T. McCoslin should die in consequence of a duel, or of the violation or attempted violation of the laws of the State, the same should be void and of no effect; and that on or about the 27th day of August, 1907, said J. T. McCoslin, in violation of the laws of the State of Texas, made an unlawful assault with a pistol on one Dr. J. H. Keys, and that a number of shots were exchanged between them, during which the said J. T. McCoslin was struck and wounded with a bullet, in consequence of which he died, and thereby said certificate had become null and void.

There was a trial of the case before a jury, which resulted in a verdict for plaintiffs, on which judgment was rendered in accordance with the prayer of the petition. Defendant made a motion for a new trial, which was overruled, to which exception was taken and notice of appeal given, appeal bond filed and errors assigned, and the case is brought to this court for revision.

In its first assignment appellant complains that the court erred in charging the jury as follows: "You are instructed that if you believe, from a preponderance of the evidence in this case, that the Sovereign Camp of the Woodmen of the World issued and delivered to J. T. McCoslin, the certain beneficiary certificate and policy of insurance offered in evidence upon this trial before you, and that said J. T. McCoslin complied with all the conditions and requirements thereof, and paid all premiums due thereon during his life, and to the date of his death, and that more than two years had elapsed since the date of said policy, and that said J. T. McCoslin is now dead, then you will find for plaintiffs in the sum of $1,000, together with six percent interest thereon from the date of proof of death of J. T. McCoslin, to wit, November 30, 1907; and that you will find for plaintiff the further sum of $100, the contract price of the tombstone contracted to be placed at the grave of deceased. This judgment you will apportion between the plaintiffs as follows: three-fourths to Lula McCoslin and her five children, Thomas, Horace, Lillian, George and Barney McCoslin, and one-fourth to J. H. McCoslin and A. T. Martin."

It is contended that this charge, in effect, ignored the defense which was set up in defendant's answer, the phrase in said charge requiring the jury to find that said J. T. McCoslin complied with all the conditions and requirements of said beneficiary certificate not being a sufficient reference to such defense to call the attention of the jury thereto, especially in view of the fact that the court did not undertake in his charge to the jury to state, define or construe the conditions and requirements of said beneficiary certificate, or make any other reference thereto. This contention is not sustained. The portion of the charge complained of instructed the jury what facts must be found by them before they could find for plaintiffs, and was followed in the next paragraph with instructions as to the matters that must be found by them to authorize a verdict for defendant.

This paragraph reads as follows: "You are further instructed that if you believe from a preponderance of the evidence in this case that J. T. McCoslin unlawfully and without justification, and in violation of the law of the State of Texas, made an assault to murder on Dr. J. H. Keys, and that in the course of said difficulty said Keys shot said McCoslin while he was so violating the law, and that said Mc-Coslin afterwards died from said wounds so received, then you will find for defendant." It was not necessary that the statement of the affirmative matter should also contain a statement of the defensive matter. The charge is to be construed as a whole, and, when so construed, the jury could not be misled by the charge complained of.

Error is assigned to that portion of the charge reading as follows: "And you are further instructed that, unless you find that said J. T. McCoslin acted in violation of law in making the assault on Dr. J. H. Keys, if you find he made any such assault; or if you believe from the evidence in the case that said McCoslin was acting in his necessary self-defense—that is, the necessary defense of his person against what appeared to him to be an unlawful assault by Dr. Keys upon his person—then you are instructed that if he died from a wound received in a difficulty, this does not preclude the recovery as hereinbefore instructed, and if you so find you will find for the plaintiffs as hereinbefore instructed."

The proposition presented is that this portion of the charge assumes that Dr. Keys had done some act from which it might appear to J. T. McCoslin that said Dr. Keys was making an unlawful assault upon his person, whereas the overwhelming preponderance of the testimony shows that the said Keys, prior to the time when he was fired upon by the said J. T. McCoslin, had done no act from which it would appear that said Keys was then making an unlawful assault upon the person of the said J. T. McCoslin. The charge is not subject to the construction given it by appellant. It does not assume "that Dr. Keys had done some act from which it might appear to J. T. McCoslin that Dr. Keys was making an unlawful assault upon his person." The charge instructs the jury that, "unless you find that said J. T. Mc-Coslin acted in violation of law in making the assault on Dr. Keys," etc., or if "McCoslin was acting in his necessary self-defense," etc., such finding would not preclude a recovery by plaintiffs. Deceased, J. T. McCoslin, had heard, about two weeks before being shot, that Dr. Keys had threatened his life. John McCoslin, who was in the wagon with his father at the time of the shooting, testified that "just about the time we got up even with him (Dr. Keys) he reached down in front of the buggy and picked up his gun. Father (deceased) saw him about that time and grabbed his gun, and both of them began to shoot. It was hard to tell which one got the first shot. I called my father's attention to the fact that Dr. Keys was about to shoot him." This evidence, if true, was sufficient to sustain a finding that Dr. Keys was the aggressor in the fight.

Again, it is contended that, under the evidence of the plaintiffs, the danger to J. T. McCoslin, if any, was actual, and not apparent in the sense of being imaginary danger to said J. T. McCoslin, as a justification of his assault on Dr. Keys, and the court should not have in-

structed the jury on "defense of his person against what appeared to him to be an unlawful assault by Dr. Keys upon his person." This contention is not sustained. If there was actual danger to J. T. Mc-Coslin, it necessarily follows that there was apparent danger to him. Under plaintiffs' testimony, the actual danger was preceded by such appearances of danger as to call upon deceased to defend "against what appeared to him to be an unlawful assault by Dr. Keys upon his person."

Error is assigned to the court's action in giving to the jury special charge No. 1 requested by the plaintiffs, as follows: "At the request of plaintiff, you are charged that the burden of proof is upon the defendant to show by a preponderance of the evidence that the deceased, J. T. McCoslin, met his death in violation of or attempted violation of the law, and unless you believe such fact is shown by such preponderance of all the evidence in the case you will find for the plaintiff."

It is contended that this charge "gave undue prominence to the necessity on the part of the defendant to show, by preponderance of the evidence, that J. T. McCoslin met his death in violation or an attempted violation of the law, for the reason that the court in his main charge had already told the jury that, in order to find for defendant, they must believe from the preponderance of the evidence that the said McCoslin without justification, and in violation of the laws of the State of Texas, made an assault to murder Dr. J. H. Keys, and in the course of the difficulty was shot, and afterwards died from the wound, in order to find for defendant. And the court had also instructed the jury that, unless they found that said J. T. McCoslin acted in violation of the law in making the assault on Dr. J. H. Keys, or if they believed that he was acting in self-defense, to find for plaintiffs." The main charge had nowhere instructed the jury, except by inference, upon whom the burden of proof rested, and this charge was asked to correct this omission in the court's charge. The court had instructed the jury that certain issues must be determined by a preponderance of evidence, but it is held that this does not place the burden of proof. Kerr v. Blair, 47 Texas Civ. App., 406 (105 S. W., 552); El Paso Electric Ry. Co. v. Alderete, 36 Texas Civ. App., 142 (81 S. W., 1248); W. of W. v. Torrence, 103 S. W., 652. In view of the fact that the court nowhere told the jury upon whom the burden of proof rested to prove the main and only real litigated issue in the case, it was clearly the right of the plaintiffs to have the jury told that the defendant was legally charged with that burden; and the fact that the court had previously told the jury that the facts should be shown by a preponderance of the evidence did not change the rule. This was the crucial issue in the case. The testimony was flatly contradictory on the issue. Yellow Pine Oil Co. v. Noble, 101 Texas, 125; El Paso & S. W. Ry. Co. v. Foth, 101 Texas, 133.

Again, it is insisted that the trial court erred in giving to the jury special charge No. 2, requested by plaintiffs, which reads as follows: "You are instructed that the law gives to every person in this State

the right of self-defense, and upon the law of self-defense as is applicable to this case you are instructed that if, from the acts of said Dr. Keys, or from his words coupled with his acts, there was created in the mind of said J. T. McCoslin a reasonable apprehension that he, J. T. McCoslin, was in danger of losing his life or suffering serious bodily harm at the hands of the said Dr. Keys, then the said J. T. McCoslin had the right to defend himself from such danger or apparent danger as reasonably appeared to him, the said J. T. McCoslin, at the time, viewed from his standpoint. And a person so unlawfully attacked is not bound to retreat in order to avoid the necessity of killing his assailant. If you believe that the said J. T. McCoslin committed the assault on Dr. Keys, if he did do so, that he was in danger of losing his life or of serious bodily injury at the hands of the said Dr. J. H. Keys, then you will find for plaintiff and assess the damages as hereinbefore instructed."

The proposition is presented that this "charge assumes that Dr. Keys made an unlawful attack on J. T. McCoslin, and committed some act or uttered some words from which the jury might find that there was created in the mind of J. T. McCoslin a reasonable apprehension that said J. T. McCoslin was in danger of losing his life, whereas the great preponderance of evidence shows that as a matter of fact the said Dr. Keys made no unlawful attack on J. T. McCoslin, and had done no act nor uttered any word in respect to the said McCoslin until after the said McCoslin had opened fire on him with a pistol. The evidence shows that at the time McCoslin fired on Dr. Keys the latter had his back turned to McCoslin, and the first notice he had was when McCoslin began to swear at him and shoot at him." This proposition is not sustained. The charge was correct. Willson's Crim. Stats., vol. 1, p. 264, note 10. It instructs the jury that "if, from the acts of said Dr. Keys, or from his words coupled with his acts, there was created, etc., a reasonable apprehension" of danger to deceased at the hands of Dr. Keys, he had a right to act. etc., and does not assume the character of Dr. Keys' acts or words, but leaves the jury to determine them. It is not material that the apparent preponderance of the evidence may be one way or the other. Plaintiffs had a right to have the law applicable to their testimony submitted to the jury.

The issue as to who was the aggressor in the unfortunate difficulty resulting in the death of J. T. McCoslin was one for the jury to decide, and we feel bound by their verdict. Woodmen of W. v. Torrence, 103 S. W., 652.

It follows from the foregoing remarks that the court did not err in refusing appellant's requested instruction to find for defendant.

Finding no reversible error in the record the judgment is affirmed.

*Affirmed.*

Writ of error refused.