No. ——

First Circuit

---

GROSE v. LIBERTY INDUSTRIAL LIFE INS. CO.

---

(May 3, 1927. Opinion and Decree.)

---

*(Syllabus by the Editor)*

1. **Louisiana Digest—Insurance—Par. 43, 123.**

Where an insurance policy stipulates no payment made "for injury received while violating the law" and "in consequence of a criminal act", the beneficiary can recover for death of the insured killed by a murderous assault

without provocation after the first combat had ceased.

**2. Louisiana Digest—Homicide—Par. 2.**

Where a combat had been abandoned and, without any further provocation, one is killed, the proximate cause of death is an independent event not connected with the original combat.

Appeal from Allen Parish. Hon. Jerry Cline, District Judge.

Action by Mary Grose against Liberty Industrial Life Insurance Company.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

Reed & Blackshear, of Oakdale, attorneys for plaintiff, appellee.

L. J. Mayeux, of Oberlin, and Guion & Upton, of New Orleans, attorneys for defendant, appellant.

MOUTON, J. Luther Grose took two life insurance policies in defendant company, one on July 24, 1924, and the other February 23, 1925, for an aggregate amount of $632.56. Mary Grose was made the beneficiary in the two policies. Luther Grose was killed by Lanhopp in June, 1926. Plaintiff brings this suit as beneficiary to recover the amount of the policies. Judgment was rendered in her favor for the amount claimed.

In one of the policies the insured is denied any benefit "for injuries received by him while violating the law", and in the other it is also stipulated that there can be no recovery on the policy for death of the insured "in consequence of a criminal act".

The solution of the issues presented depends on a proper application of these stipulations or provisos of the policies to the facts of the case.

Luther Grose, the insured, was playing a game of dominoes with Owen Lanhopp. For some reason or other they got into a quarrel. Grose picked a pop bottle and assaulted Lanhopp with it. They clinched and were separated. A few minutes intervened, and they again clinched and were again separated. The witnesses do not agree as to the time which elapsed between the first and second fights. It would seem from the evidence that about a minute or two intervened between the two difficulties. After the second encounter, it appears that Riley, who had separated the combatants, said to Grose: "Go out of here," and that Grose answered: "I will, soon as I get my hat;" that he picked his hat from the floor, placed it on his head, proceeded towards the door to walk out, and that as he was a short distance from the door, Lanhopp suddenly rushed on him, stabbing him to death. It is clearly shown that when Grose was thus walking towards the door and was stabbed, that he was unarmed. The interval which elapsed between the second encounter and the time Grose was stabbed is not fixed with any degree of certainty by the witnesses. Some say that the interval was about one minute, while others estimate it to be as much as four minutes. There must, however, have been cooling time, as Grose, in obedience to the order from Riley, expressed his willingness to go, and was actually leaving the scene of trouble when Lanhopp, without the least provocation, suddenly assaulted him with his knife and killed him. When Grose was walking

towards the door, peacefully, with the idea evidently of getting out of the building, he was acting in obedience and not in contravention or violation of law. It was then he received the injuries of which he soon after died, and he was certainly not "violating the law" at that time so as to operate a forfeiture of his rights as an insured under the stipulation in one of the policies. It is equally certain that when Grose was thus leaving the scene of trouble, that it cannot be said he was showing the slightest disposition to commit a criminal act. It must be noted that the stipulation in the other policy which exempts the defendant from liability, is when death occurs to the insured "in consequence of a criminal act". As there was no criminal act committed by Grose, the insured, and none intended, it cannot be held that his death was a "consequence of any such act". Counsel for defendant contends that Grose, the insured, was the aggressor in the original quarrel; that the trouble, which finally resulted in the death of Grose, was a continuous transaction, Grose remaining to the end in the attitude of an aggressor. He was the aggressor when the trouble started, as that fact is established by the evidence. As to the second encounter, the evidence failed completely to show who was the aggressor. Though the aggressor, originally, there was certainly sufficient time for passion to have subsided, and for reason to have resumed its sway when Grose proceeded to walk out of the building. At that time he was unquestionably getting away from the scene of the conflict. Under such circumstances it has been held, if the party retreating is killed, the act of his adversary in thus killing him is to be considered the proximate cause of death rather than the original violation of law by the insured. Sup. Ldg. K. of P. vs. Bradley, 73 Ark. 274, 83 S. W. 1055, 108 Am. S. R. 38, 67, L. R. A. 77013 Am. Cases.

When the combat has been abandoned by the insured, without any further provocation to his adversary than the original assault, and he is killed, this must be considered an independent event produced by the revengeful spirit of the slayer, and is the proximate cause of death. Gluff vs. Mutual Benefit Life Insurance Company, 99 Mass., Bradley vs. Mutual Life Insurance Company, 43 N. G. 422, 6 Am. R. 115. The doctrine announced in the case above cited fits the facts of this case and relieves the beneficiary of the imputation that the insured lost his life in consequence of a criminal act, or that he was killed while violating the law. He was simply the defenseless victim of a murderous assault which cannot be held to have entailed a forfeiture of the policies.