No. 3950

Second Circuit

(Second Division)

BLAKE ET AL. v. UNITED BROTHERS OF FRIENDSHIP AND SISTERS OF THE MYSTERIOUS TEN

(December 9, 1931. Opinion and Decree.)

James W. Jones, of Natchitoches, attorney for plaintiffs, appellees.

Breazeale & Hughes, of Natchitoches, attorneys for defendant, appellant.

TALIAFERRO, J. Defendant is a fraternal and beneficial association. In connection with its other activities it has created

an endowment bureau through which it carries insurance on the life of its members. On November 26, 1928, defendant issued to one Joe Blake a policy for $300 wherein plaintiffs, Edward Blake, Albert Blake and Lee McCasky are named beneficiaries. On January 29, 1929, Joe Blake, the assured, was slain by one Isiah Jones, while on the premises of the slayer. Timely proof of death was submitted to defendant and demand made for payment of the amount of the policy, but declined.

Defendant's constitution and by-laws provide that thirty days after filing of proof of death of a member of a subordinate lodge or temple, a payment of $50 will be made for burial benefit. Payment of this amount was also refused for the same reasons as were assigned for not paying the policy on life of the deceased. Plaintiffs sue to recover the amount of the policy and for the burial benefit.

Defendant resists payment of the amounts for which it is sued on following grounds:

That the policy, and the rules and regulations of the society, provide that if death of the insured result from acts of violence no recovery could be had; that the insured did meet death as a result of violation of law in that he was killed by Isiah Jones while trespassing upon Jones' premises and violating the sanctity of his home by entering therein for the purpose of unlawful sexual intercourse with Jones' wife; that deceased had been warned by Jones to not visit his home, and when killed deceased was violating the law and the conditions of the policy.

Plaintiffs recovered judgment for both amounts sued for. Defendant prosecutes this appeal.

Isiah Jones suspected undue intimacy between his wife and Joe Blake, the insured, and he testified that he had warned Blake to stay away from his home. He admitted that he shot Blake at night while talking to his (Jones') wife at the rear door of Jones' home. He admits he saw nothing wrong in Blake's conduct or actions at the time beyond the fact that he was talking with Mrs. Jones. He was laying in wait near his own chicken house when deceased appeared. The deceased lived three-quarters of a mile west of Jones' home, and it is shown that there is a plantation or neighborhood trail leading from the western part of the neighborhood to Jones' residence, and he admits this trail was used by "home" people.

Levenia Jones, the woman in the case, testified that she was in her house when she heard the shot that killed Joe Blake; that the shot was fired back of the house, but Blake fell in the front yard; that she had not talked with Blake the night he was killed, nor had their relations at any time been immoral.

The provision of the policy which defendant invokes to escape liability is as follows:

Provided: "That said member has made true statement relative to age, health, and physical condition, and that death does not result from acts of violence, intoxication, venereal disease, judgment of the state, or fall under the legal definition of suicide, or from the hands of the beneficiary."

This is a literal copy of a part of article VIII of the by-laws of the society.

It is argued by counsel of defendant that the conduct of the insured in coming upon Jones' premises, after having been warned not to do so, and talking with Jones' wife, amounted to an act of violence, within the terms of the policy and, this being true, no recovery thereunder can be had. We

are unable to agree with this reasoning. If Jones' testimony is true Blake was guilty of imprudence in entering upon Jones' premises, but we know of no law he violated in doing so. He certainly used no force to enter the premises. The record does not disclose definitely but we have the impression that both Jones and the deceased were tenants on farms or plantations, and it is shown that a neighborhood road or trail leads from the direction of where deceased lived to the home of Jones, which is used by people of the community.

Counsel argue earnestly that Blake intended to have intercourse with Jones' wife, with or without her consent, and offer this as his motive for his visit on the fateful night. What may have been Blake's motives we are left to conjecture. Motives and intentions when not carried to the extent of violation of law or the moral code amount to little. However, in passing, we might add that in our opinion under the terms of the policy under discussion, adultery on the part of the insured does not ipso facto vitiate the policy. Such immoral act would probably be ground for expulsion or suspension from the society, which would automatically terminate all rights under the policy. There is no contention whatever that deceased was not in good standing with defendant society when killed.

We have been cited to no authority by counsel for defendant in support of its position and defense in this suit, and have found none. We do not think any can be found. The language of the policy is clear and unambiguous as to what acts on the part of the assured will annul its provisions. The record does not establish that the insured had violated any of these special provisions.

The judgment appealed from is correct and is hereby affirmed.