SIMMONS v. VICTORY INDUSTRIAL LIFE INS. CO. OF LA.

(January 25, 1932. Opinion and Decree.)

Lenfant & Villere, of New Orleans, attorneys for plaintiff, appellee.

Chas. I. Denechaud and Ernest J. Robin, of New Orleans, attorneys for defendant, appellant.

HIGGINS, J. This is a suit by the beneficiary of an industrial life insurance policy to recover the sum of $184, the face value thereof. The defense is that the insured came to her death as a result of self-inflicted abortion, which, it is averred, is a criminal offense under the laws of this state and specially excepted from coverage under the following clause of the policy:

"If the Insured shall, within three years from the date of this Policy, die by his or her own criminal act, or by suicide, sane or insane, voluntary or involuntary, the only liability under the policy shall be for all premiums paid, which premiums the Company agrees to refund to the person entitled thereto. If the Insured shall at any time engage in military or naval services, (militia when not in active service excepted) or be now or hereafter connected in any way, directly or indirectly, with the sale or manufacture of malt, alcoholic or spiritous liquors, this Policy shall be void, unless the consent of the Company be endorsed hereon, signed by the President or the Secretary."

There was judgment in favor of the plaintiff as prayed for, and the defendant has appealed.

The record shows that the deceased was an unmarried female, twenty-three years of age, and died on April 4, 1931, from blood poisoning or septicæmia, resulting from a miscarriage or abortion.

On the trial of the case on its merits, the defendant placed on the stand as its witness the attending physician of the insured, and sought to prove by him that the deceased had confided to him that she was in a pregnant condition and that she took about forty grains of quinine for the purpose of bringing on an abortion. The attorney for the plaintiff objected to the doctor testifying to any statements made by the patient to the attending physician, on the ground that such communications were privileged. The trial court sustained the objection and excluded the evidence, to which the defendant's attorney timely and properly reserved a bill of exception.

The propriety of the action of the trial judge in excluding this testimony is a matter on which there seems to be a conflict of authority. State v. McCoy, 109 La. 682, 33 So. 730; State v. Genna, 163 La. 706, 112 So. 655; article 6, sec. 12, Constitution of Louisiana of 1921; Cyc. of Law and Procedure, Vol. 40, sec. (v), page 2387, verbo "Witnesses"; Wigmore on Evidence, Vol. V (2d Ed.) secs. 2386-2387, pages 218-219, verbo "Privileged Communications" (Physician & Patient).

But conceding that the evidence should have been admitted, and viewing the record as if the fact had been established, a view most favorable to defendant, we pass to a consideration of the question of whether or not a pregnant woman, who intentionally commits an abortion upon herself, has violated any criminal law of this state.

In Corpus Juris, Volume 1, secs. 17 and 19, page 315, verbo "Abortion," we find the following language:

Sec. 17. "The Woman. A woman who swallows a drug or submits to a criminal operation for the purpose of procuring abortion is not a principal, unless she is made so by statute; and it is generally held that the woman is not included by the terms of a statute making it a crime for 'any person' to administer drugs to or use an instrument on a woman with the intent to procure an abortion. In some states, however, she is, by separate statute, made liable to punishment, and in some cases to the same punishment as a person who commits the abortion on her."

Sec. 19. "The Woman. According to the great weight of authority, in both England and the United States, the woman who takes drugs or other things or submits to an operation with the intent to procure abortion is not an accessory or accomplice, even though she solicits the use of the means employed. She is looked upon rather as a victim than as a co-offender. By statute, however, in some states, a woman who voluntarily takes a drug administered by another for the purpose of procuring an abortion is an accomplice."

In volume 1, Ruling Case Law, secs. 4 and 6, pages 71 and 73, the general rule of law is stated as follows:

Sec. 4. "The statutes with regard to attempts to procure and procuring abortions are directed against the persons who commit the act and not against the person upon whom the act is committed, notwithstanding it may be done with her knowledge and consent, and she, as a general rule, incurs no criminal liability."

Sec. 6. "The language of the statutes of the different states describing the offense varies somewhat, but they nearly all provide that whoever, with the intent to produce the miscarriage of any pregnant woman or of any woman, unlawfully administers, or causes to be given to her, any drug or noxious substance whatever, or unlawfully uses any instrument or means whatever, with such intent, shall be guilty of the offense."

In the state of Louisiana, only such acts as are prohibited by statute are criminal. State v. Comeaux, 131 La. 930, 60 So. 620;

New Orleans v. Stein, 137 La. 652, 69 So. 43.

In this state, the law on the subject of abortion is found in the Revised Statutes, section 807, as amended by Act 24 of 1888:

"Whoever shall feloniously administer, or cause to be administered, any drug, potion, or any other thing, to any woman for the purpose of procuring a premature delivery, and whoever shall administer, or cause to be administered, to any woman pregnant with child, any drug, potion, or any other thing, for the purpose of procuring abortion or a premature delivery, or whoever by any means whatsoever shall feloniously procure abortion or premature delivery, shall be imprisoned at hard labor for not less than one nor more than ten years."

From a reading of the provisions of this statute it is clear that any one who feloniously administers, or causes to be administered, any drug or potion, or any other thing, to a woman for the purpose of procuring an abortion, or premature delivery, is guilty of a crime. In short, it is clear that the Legislature intended to cover third persons who committed such an offense. But whether the Legislature meant to make it an offense for a woman to commit such an act upon herself is not so easy of solution. The first two clauses of the act obviously relate to third persons. If the statute can be said to include the woman upon whom the act is committed, it must necessarily come within the last clause, which reads "or whoever by any means whatsoever shall feloniously procure abortion or premature delivery. * * *" It appears that this language was added to the Revised Statutes, sec. 807, by Act 24 of 1888. Was it the intention of the Legislature, in adding on this language to Rev. St., sec. 807, to enlarge the scope of the section as to the means adopted in bringing on the abortion, or was it the intention of the Legislature to extend the provisions

of the statute so as to cover the woman upon whom the act was committed, where she consented thereto or caused it to be done herself, or was it the intention of the Legislature to accomplish both of these purposes?

In the case of State v. Mauvezin, 136 La. 746, 67 So. 816, the Supreme Court had occasion to consider Rev. St., sec. 807, as amended by Act 24 of 1888, and said:

"Hence section 807 makes no distinction between the attempt and the actual procurement of abortion or premature delivery. The section was, however, by its terms restricted to the internal application of drugs, potions, or like things, for the purpose of procuring abortion. Act No. 24 of 1888 sought to enlarge the scope of the section by interpolating the following clause: " 'Or whoever by any means whatsoever shall feloniously procure abortion or premature delivery.' "

So there is not any doubt that the Legislature intended to cover cases where the abortion was brought on both by external as well as internal means; in short to enlarge the scope of the statute as to the means employed.

It is elementary that criminal laws are strictly construed, and, unless an act can be said to fall within the meaning of the words of a statute, it is not a criminal act, though it comes within the mischief sought to be remedied and is equally atrocious with the acts enumerated by the statute. State v. Fontenot, 112 La. 628, 36 So. 630. It is equally well established that:

"It does not suffice, in a criminal statute, that its purpose should be manifest. To be effective, that purpose must find expression in its language as required by legal rules. Courts may be authorized sometimes to restrain the generality of the terms of a law so as to exclude from its operation exceptional cases, but not to enlarge the terms of a limited law. State v. Leo, 108 La. 496, 32 So. 447." Louisiana Digest, verbo "Criminal Law," Vol. 2, section 5, page 510.

So it is clear that the Legislature cannot make an act criminal by inference, or suggestion, but must do so by clear and definite language. Now it cannot be said that the last clause of the statute (Rev. St., 807 as amended by Act 24 of 1888) clearly or definitely makes it a crime for a woman to commit the act of abortion upon herself. This clause appears to add on to the statute a greater scope as to the means of procuring the abortion and not an additional class of persons. If the Legislature had intended to add a further class of persons, language conveying that meaning could have been easily and readily employed, so that there would not have been any uncertainty or ambiguity in the statute. There is no doubt that a woman who commits such an act, or suffers it to be done, is guilty of a great moral wrong; but we do not believe that the Legislature intended to make such women guilty of a criminal offense. One may be guilty of a moral wrong and not be guilty of a crime. Landry v. Independent National Life Ins. Co., 17 La. App. 10, 135 So. 110.

Having come to the conclusion that, even if the deceased had purposely brought on, by the use of drugs, the abortion which resulted in her death, she was not guilty of violating any criminal law of this state, the provision of the policy in question is inapplicable.

It was also suggested in argument at bar that the deceased might be said, under the above-quoted clause of the policy, to be guilty of "involuntary suicide." Counsel was unable to enlighten us as to what was the meaning of this term. However, there is no showing of suicide in the record.

For the reasons assigned, the judgment appealed from is affirmed.