## GAINES v. ACME INDUSTRIAL LIFE INS. SOC.

### No. 14663.

Court of Appeal of Louisiana. Orleans.
June 11, 1934.

Chas. J. Rivet, of New Orleans, for appellant.

John T. Charbonnet, of New Orleans, for appellee.

WESTERFIELD, Judge.

Plaintiff claims $250 as the beneficiary under a policy of industrial life insurance for that amount issued in the name of her daughter. There was judgment below for $125, and defendant has appealed.

The suit is defended upon the ground that the insured, Rebecca Antoine, met her death "while practicing prostitution and as a result of a self-administered over-dose or heroin, a dangerous habit-forming drug derived from morphine, which is the narcotic principle of opium. That said narcotic came into and was in the possession of said Rebecca Antoine in violation of the laws of the United States and of this State. That said drug attacked the said decedent's heart, liver and other organs and she died within seven hours from the time that she snuffed the same." It is averred that no recovery can be had under the policy because of the following provision:

"Benefits will not be paid at any time for death resulting from violation of law, immorality, alcoholism, venereal diseases or insanity. Or if the insured should die from heart disease, tuberculosis, chronic bronchitis, cancer, Bright's Disease, liver trouble, pellagra, or any chronic disease contracted within twelve months from date of policy, only one-half the sum otherwise provided for under this policy will be payable."

Rebecca Antoine, the insured, died in the Charity Hospital at 9:35 a. m. June 19, 1932. She had been admitted to the hospital an hour and a half before her death, having been taken there in a comatose state from her residence, No. 1542 Conti street. The night before Rebecca died she had been in the company of another negress, Georgianna Lee, and two white men, returning to her home about 4 a. m., supported by the two white men because of her inability to stand erect. She soon lapsed into a coma and was removed to the Charity Hospital about 8 a. m., where she died, without regaining consciousness. According to the certificate of the recorder of births, marriages, and deaths, she died of "acute pul. edema, cong. of liver, kidney, brain & stomach." The record of the Charity Hospital, which included a detailed statement of the treatment administered and a post mortem autopsy, were admitted in evidence over the objection of plaintiff's counsel, and, if the action of the court in allowing this evidence had been correct, it would doubtless have been an important factor in our consideration of the case, but under repeated rulings of this court the records of the Charity Hospital, when objected to, are inadmissible because they are hearsay; and the testimony of the defendant's medical expert based upon these records is, for the same reason, also objectionable and cannot be considered. Dolan v. Metropolitan Life Ins. Co., 11 La. App. 276, 123 So. 379; Wil-

liam v. Locicero (La. App.) 142 So. 856; Ayo v. Holzenthal, 19 La. App. 561, 141 So. 92.

There remains of competent evidence the testimony of Woodrow Wilson, a negress who resided with the deceased for a year prior to her death and who, when asked the business of the deceased, replied that "she run a fast life." This witness at first testified in her direct examination that Rebecca Antoine and Georgianna Lee "and two white fellows * * * were using dope together"; but, when asked to give particulars, she acknowledged that she did not see Rebecca take any medicine, any drug, or liquor of any kind, and that her only reason for saying that "dope" had been used by Rebecca was based upon her physical condition when she returned to her home. Elenora Williams, another witness, testified that she had seen Rebecca in normal health about 7 p. m. and again at 5:30 a. m., the next morning, when "she was staggering and they were holding her up." She did not know what caused Rebecca's death and did not know whether she was drunk or sober, or had used drugs. It was admitted that if Lawrence Segue were present and sworn as a witness he would testify that he was the common-law husband of the insured.

■ The question for our determination is whether, upon the record before us, it can be said that Rebecca Antoine died as a result of "violation of law, immorality, alcoholism; venereal disease, or insanity," and her beneficiary therefore excluded from recovery under the provisions of the policy to that effect, and, secondly, whether she died from heart disease, tuberculosis, chronic bronchitis, cancer, or Bright's disease, liver trouble, pellagra, or any chronic disease, and her beneficiary limited to a recovery of $125, or one-half the face value of the policy, in accordance with its terms; it being admitted that the death of Rebecca occurred within twelve months of its issuance. The policy under consideration was, generally speaking, payable in the event of Rebecca Antoine's death. Under certain conditions the insurer is exempt from liability if death occurs as a result of particular diseases or practices. The burden of establishing exemption falls upon the insurer. Cahn & Wachenheim v. Fidelity & Casualty Co., 157 La. 238, 102 So. 320; Simmons v. Victory Ind. Life Ins. Co., 18 La. App. 660, 139 So. 68; Blake v. United. Brothers of Friendship, etc., 18 La. App. 378, 138 So. 190; Grose v. Liberty Ind. Life Ins. Co., 6 La. App. 390; Flowers v. Grand Lodge, K. of P. (La. App.) 146 So. 782; Corpus Juris, vol. 37, verbo "Life Insurance," § 414, pp. 617, 618.

■ From our reading of the record, we are uncertain as to the cause of Rebecca's death. We are convinced, however, that she was a woman addicted to immoral practices and habits, but we cannot say that she died from a "violation of law," "immorality," or "alcoholism." In the first place, we are uncertain of the degree of immorality necessary to cause death and have some doubt concerning the ability of any litigant to prove fatal consequences flowing from this cause alone. In this case the insured was a prostitute, one of the oldest and perhaps least respected occupations in the world, but one which, however immoral, is, we believe, not necessarily fatal per se.

■ The testimony concerning the condition of the insured just before her death is that, it was such as could easily be due to excessive indulgence in alcoholic liquors or narcotics, but, at the same time, it might have been caused by something else. We know that drunkards stagger and sometimes become comatose, but these familiar symptoms of advanced intoxication also characterize other disorders affecting the brain centers of equilibrium, locomotion, and conciousness. At any rate, their presence is insufficient evidence upon which to affirm, with legal certainty, a case of fatal alcoholism.

■ Nor can we say that the insured died of liver trouble. The only evidence on that point is the reference to "cong. of liver" in the enumerated causes of death in the death certificate. Dr. Henry P. Farish, defendant's expert, testified that the death certificate, while purporting to give the cause of death, only mentioned symptoms, saying "this certificate has no cause of death, just the symptoms, result of death."

What we have said would appear to lead us to an affirmation of the judgment because of the failure of the defendant to establish its defense and, under ordinary circumstances, such result would be inevitable. But in this case the evidence concerning the cause of Rebecca Antoine's death, the vital point in the case, is exceedingly meager and the surrounding circumstances at least suspicious of death without the coverage of the policy. The hearsay evidence submitted on behalf of defendant has necessarily affected us because of its presence in the record, but it may be that, upon a new trial, the unfavorable impression created by this evidence will be removed, or overcome by other evidence.

In our opinion the interest of justice will be best subserved by remanding the case.

Bauman-George Piano Co. v. Matthews (on rehearing) 4 La. App. 334–337.

For the reasons assigned it is ordered, adjudged, and decreed that the judgment appealed from be and it is annulled, avoided, and reversed, and it is now ordered that this cause be remanded to the First city court of New Orleans for a new trial, with the right in both parties to introduce further testimony as they may deem proper.

Reversed and remanded.