SOVEREIGN CAMP, W. O. W., v. RIVERA.

No. 13609.

Court of Civil Appeals of Texas.
Fort Worth.

Oct. 29, 1937.

Rehearing Denied Dec. 10, 1937.

Lightfoot, Robertson, Saunders & Gano and Claude Williams, all of Fort Worth, and Rainey T. Wells, of Omaha, Neb., for appellant.

Rogers & Spurlock, of Fort Worth, for appellee.

BROWN, Justice.

Appellant issued to Sylvestre Rivera a contract of insurance covering the life of said assured. It was in full force and effect on March 24, 1936, when the assured was shot to death by a Fort Worth policeman, in the assured's living quarters, within the city of Fort Worth. The beneficiary, Maggie Rivera, was the wife of the assured.

Demand was made upon the insurer for payment under the contract, and this was refused. Suit being brought in the district court of Tarrant county, the insurer, a fraternal benefit society, defended by alleging that the assured met his death in consequence of the violation of the laws of the state of Texas, in that: (a) He was in the unlawful act of selling untaxed liquor, contrary to the law; (b) that he had in his possession untaxed liquor, contrary to the law; (c) that he was resisting the lawful arrest of a peace officer; (d) that he was attempting to escape from a peace officer after an arrest had been made for the violation of the laws of Texas; (e) that he was committing assault and battery on the person of Officer Winder; (f) that he was committing assault and battery on the person of Officer McMahan; (g) that he was then and there committing assault with intent to murder Officer Winder; (h) that he was then and there committing an assault with intent to murder Officer McMahan.

The insurer pleaded that its by-laws of which the assured must, under the contract, take notice and be bound by, provided that no recovery can be had under the contract if the assured should die, "in consequence of the violation of the laws of the State, etc."

At the conclusion of the introduction of all evidence for both parties, the trial court refused the request of the insurer to give the jury a peremptory instruction in its behalf, but gave such instruction for the beneficiary. A judgment was entered for the face of the policy, with the statutory penalty and attorney's fees.

The defendant below, Sovereign Camp, Woodmen of the World, and insurer, has appealed.

We find seven assignments of error in appellant's brief. No effort is made to point out the place in the record where the errors were raised in the trial court.

Time was when appellate courts declined to consider such assignments of error, but the tendency now seems to be to give the assignments of error consideration, if they substantially comply with the requirements of the statute, regardless of the fact that the appellate court must search the record to find where the point was raised.

An inspection of the transcript discloses that appellant filed a motion for a new trial which contains nine alleged errors. Six of the seven assignments of error here presented are taken from the motion. The seventh complains of the overruling of appellant's general demurrer addressed to appellee's petition.

■■ Of course, the assignment of error which complains of the overruling of the general demurrer, and that complaining of the giving of the instructed verdict for the plaintiff below, are such that either, or both, may be raised on the appeal without having been incorporated in the motion for a new trial, but what we are pleading for is a brief in each case that points out and identifies the part of the record where the point urged before us was raised in the trial court.

■ The first assignment of error complains because the trial court refused to give appellant its requested peremptory charge, when appellee finished the introduction of evidence and rested her case.

There is no merit in this assignment of error because it appears from the record that appellant was not willing to stand on the record at such point, but after its request for an instructed verdict was refused, it introduced its witnesses and its documentary evidence in support of its defenses.

Under such circumstances, the appellant waived the errors, if any there were, and it should have repeated the request after the hearing of all evidence was closed. This it did, and the second assignment of error discloses the point was then raised.

■ Giving a fair interpretation of the testimony on which appellant relies for a peremptory instruction in its favor, we find the two Fort Worth policemen testifying that they saw a suspicious looking automobile near Rivera's restaurant, on the night of the homicide; they pursued it and found liquor in it; the occupants said they had purchased it at the café which the policemen identified as Rivera's; that they then went to the café to search it; that they knocked for admittance and Rivera first spoke Spanish and caused a Mexican girl, who lived with him, to hurry back into the living quarters occupied by Rivera, where she seemed busy going from place to place in such quarters; that Rivera invited them into the café; that they went on back into Rivera's living quarters without being invited; that Rivera was then wearing only a bathrobe; that they began to search the bedroom; that they found three hot-water bottles with whisky in them; that they took the bottles and ordered Rivera to put on his clothes and told him they were taking him to the city hall (where the city jail is located); that Rivera mumbled and shook his head; that they told him if he did not dress they would take him just as he was; that the policeman who had the bottles handed them to the other policeman and Rivera snatched them from him and tore them open with his teeth and spilled the whisky; that the policeman grappled with Rivera and the other policeman struck Rivera with a black jack (or "billy," a deadly weapon carried by a policeman); that Rivera then turned on the policeman who so struck him; that Rivera then engaged in a terrific struggle with the policeman from whom he had snatched the hot-water bottles and they fell on the bed; Rivera was calling for his gun and was trying to bite the policeman; the policeman who had struck Rivera with his blackjack and who was looking on during the struggle says he saw Rivera with a pistol in his hand and he fired two shots into Rivera with a pistol; that the other policeman and Rivera rolled from the bed to the floor and then the policeman who fired the shots, shot Rivera through the head, killing him instantly. Rivera never struck the policeman at any time. The policemen admitted that they did not have a search warrant authorizing them to search the premises, and did not have a warrant for Rivera's arrest. They claim that they arrested Rivera, and that he was resisting arrest.

These officers had no right to enter Rivera's living quarters and no right to search it without possessing a search warrant at the time; they had no right, power, or authority to arrest Rivera without a warrant for his arrest.

Even taking all that the policemen testify to as absolutely true, all that Rivera

had done was to have in his bedroom whisky that did not have any evidence of having had the lawful revenue stamps on it; in short, that he then possessed whisky under circumstances that showed his possession to be unlawful.

Under no circumstances can it be said that Rivera had committed any crime above the grade of a misdemeanor.

Article 213 of Code of Criminal Procedure gives officers in this state the authority to arrest, without a warrant, when a felony or a breach of the peace has been committed in the presence or view of a magistrate and the magistrate orally orders the arrest of the offender.

Article 215 of said Code provides that where by satisfactory proof it is shown to a peace officer, upon the representation of a credible person, that a felony has been committed, and the offender is about to escape and there is no time to procure a warrant, the peace officer may pursue and arrest the accused, without a warrant.

■ These policemen were trespassers on the private premises occupied by Rivera, and were intruders.

The policemen were the aggressors and were acting without authority of law. They had no more right or authority to intrude themselves upon Rivera's private quarters than did any two private citizens, and no right or authority to search the premises, or to seize any liquor that they may have found therein, regardless of the fact of its being liquor, the possession of which was then and there unlawful.

The undisputed evidence shows that Rivera only attempted to take the water bottles away from the policeman, who had taken possession of them unlawfully; he made no effort to do either policeman any injury; his every effort was to destroy the bottles and pour out the liquor; this he was doing, when the policeman who did not have the bottles unlawfully struck Rivera with a deadly weapon (his policeman's "billy"); this unlawful assault upon him caused Rivera to turn upon the policeman who thus struck him; and, while Rivera was thus defending his premises, his property and his person, he was shot to death.

This record indisputably discloses to us that Rivera was killed when he had given no just cause for such action. This homicide was without justification or excuse.

It not only follows that appellant was not entitled to a peremptory instruction in its favor, but that appellee was entitled to such a charge in her favor. This was given, and we overrule the second, third, and sixth assignments of error.

The fourth and fifth assignments of error are not presented.

■ Rivera was not killed by the policeman "in consequence of the violation of the law." This provision in the by-laws of appellant means that the insured's death must be the direct and proximate result of a violation of the law by the insured.

■ The death of Rivera was brought about by the unlawful acts of the policemen and the lawful acts of Rivera in attempting to protect his premises, his property, and his person against such unlawful acts. Woodmen of the World v. McCoslin, 59 Tex.Civ.App. 574, 126 S.W. 894 (writ refused); Empire L. Ins. Co. v. Einstein, 12 La.App. 380, 77 S.E. 209; Supreme Lodge K. P. v. Bradley, 73 Ark. 274, 83 S.W. 1055, 67 L.R.A. 770, 108 Am.St.Rep. 38, 3 Ann.Cas. 872.

■■ The seventh assignment of error complains of the overruling of appellant's general demurrer addressed to appellee's petition. The theory presented is that appellee should have alleged and proved that the risk resulting in the maturity of the policy was not one excepted from its general provisions.

Appellee's petition is in the usual form on a life insurance policy that has matured by reason of the death of the insured; appellant, after its general demurrer, and general denial, specially pleaded its defenses, as outlined above, and appellee specifically denied such defensive facts.

We hold that the burden was on appellant to plead and prove any defense relied upon, which is provided for in its Constitution, or by-laws, and which does not appear in the face of the contract of insurance sued upon.

See Hutcherson v. Sov. Camp, W. O. W., 112 Tex. 551, 251 S.W. 491, 28 A.L.R. 823, and cases cited.

Finding no error, the judgment of the trial court is affirmed.

DUNKLIN, C. J., disqualified, and not sitting.